# THOMPSON vs. MARSHALL.

[BILL IN EQUITY FOR REFOTMATION OF CONTRACT.]

1. *Insufficient attestation of instrument sought to be reformed.*—It is no objection to the reformation of a conveyance, embracing both real and personal property, that it is not attested in such manner as is necessary to pass the title to the realty.

2. *Laches.*—The lapse of three years, between the discovery of the mistake and the filing of the bill to correct it, does not show such laches as will deprive the party of the right to relief, when it appears that the defendant was insolvent, and that the plaintiff made repeated efforts to have the mistake corrected without the expense of a lawsuit.

3. *Maintenance.*—A contract, by which one of the defendants to a pending chancery suit, having a common interest with the other defendants in resisting the relief sought, purchases from the others their interest in the property in litigation, with "the hires, rents and damages" which may accrue in the suit, and assumes a liability for their share of the costs and expenses of the suit, is not obnoxious to the charge of maintenance.

4. *Adverse possession.*—The validity of a conveyance, *inter partes*, not being affected by the fact that the property was adversely held at the time of the execution of the instrument, such adverse possession constitutes no objection to the reformation of the instrument in equity.

5. *Statute of frauds.*—The fact that a contract in writing, signed by only one of the parties, contains stipulations to be performed by the other which are within the statute of frauds, will not prevent a reformation of the instrument in equity at the suit of the latter.

6. *Execution and mutuality of contract.*—An instrument in writing, in form a deed, which, after reciting the terms of a contract, whereby the grantor agreed to sell and transfer to the grantee his interest in certain real and personal property then in litigation, conveys the property by proper words, becomes binding on the grantor when signed, sealed and delivered by him, and does not require to be executed by the grantee, although it recites the stipulations of the contract to be performed by him.

APPEAL from the Chancery Court of Choctaw.

Heard before the Hon. WADE KEYES.

THE bill in this case was filed, on the 29th December, 1857, by Matthew A. Marshall, against John B. Thomp-

son and James H. Thompson; and sought the reformation of a contract between the parties, which is hereinafter set out.   It alleged, in substance, that on the 12th June, 1847, James Thompson conveyed by deed certain real and personal property to John B. Thompson and William H. Thompson, his sons, taking their notes for the purchase-money, with a deed of trust on the property to secure their payment; that on the 21st September, 1847, said John B. and William H. Thompson conveyed the same property by deed to James H. (son of said John B.) and William W. (son of said William H.) Thompson, and took their two promissory notes, for $5,000 each, for the purchase-money; that this latter sale was not *bona fide*, and was wholly abandoned by all the parties long before the 1st January, 1854; that on the 9th November, 1847, said James Thompson filed a bill in equity against said John B. and William H. Thompson, with others, for the purpose o  setting aside and rescinding the said sale and conveyance of the 12th June, 1847; that while the suit was still pending, complainant proposed to said John B. Thompson " to give him $2,000 for his rights and interest in the property involved in said suit, and in any claim or demand which might result from the decision of said suit, in the event that the same should be decided in favor of the defendants thereto, and pay half the amount that should ultimately be found due on the notes executed by him and the said William H. to the said James Thompson;" that this proposition was accepted by said Thompson, and an attorney was selected to draw up the contract; that the instrument drawn up by the attorney, which was executed by the said John B. and James H. Thompson on the 23d January, 1854, and which was made an exhibit to the bill, instead of binding the complainant to pay one-half the amount that might ultimately be found due on the notes executed by said John B. and William H. to James Thompson, provided, by mistake, that he should pay one-half of the two notes executed by the said James H. and William W. to the said John B. and William H. Thompson; that this mistake was discovered by the complainant in

May, 1854; that he made immediate application to the defendants to have it corrected, but they refused to correct it: and that John B. Thompson being insolvent, complainant delayed filing a bill in chancery for the correction of the mistake, because he desired to avoid the costs and expenses of the suit, until the defendant's repeated refusals to correct the mistake left him no other alternative. The prayer of the bill was for a reformation of the instrument, and for general relief.

The instrument sought to be reformed is as follows:

"State of Alabama, } Know all men by these presents, Sumter county. } that whereas," &c., (reciting the conveyance by James Thompson to John B. and William H. Thompson, the conveyance by said John B. and William H. to said James H. and William W. Thompson, the institution of the suit by said James Thompson for the purpose of rescinding the conveyance first referred to, "to which suit said Matthew Marshall is made a party defendant, and which is still pending;") "and whereas the said John B. and James H. Thompson have agreed to sell and convey to said Matthew A. Marshall the rights, interests, claims and demands, which they jointly have, and each or either of them severally has, in and to the property, real and personal, embraced and included in said deeds, and appertaining to, or arising from or out of said conveyances, with all the rights, interests, claims and demands, which appertain to them and each of them, or which may result to them or each of them, jointly or severally, from a successful termination of said chancery suit in their favor, in consideration that said Marshall will pay the one-half part of two notes executed by said James H. and William W. Thompson, for $5,000 each, (one of which was made payable on the 1st January, 1854, and the other on the 1st January, 1855, with interest from the 1st January, 1852; and which said notes were given by them in consideration of the property conveyed by said John B. and William H. to said James H. and William W. Thompson, by said deed dated the 13th September, 1847, as by reference to said deed will more fully appear,) and will also pay to said

Thompson v. Marshall.

John B. Thompson the further sum of $2,000: Now therefore these presents witness, that for and in consideration of the sum of $5,000, together with the interest on $2,500 from the 1st January, 1851, and interest on $5,500 from the 1st January, 1852, to be by said Marshall paid on the notes hereinbefore referred to, so as to pay and discharge the one-half part of said notes, and the further sum of $2,000, to be paid by said Marshall to said John B. Thompson,—we, the said John B. Thompson and James H. Thompson, have bargained and sold, and, by these presents, do give, grant, bargain, sell, convey, set over and confirm, unto the said Matthew A. Marshall, his heirs and assigns, all the right, title, interest, claim and demand, which we jointly have, and which each or either of us severally hath, in and to the following described lands;" (describing them;) "and also all the right, title, interest, claim and demand, which we jointly have, and which each or either of us severally hath, in and to the aforesaid slaves; and also all the right, title, interest and claim, which we jointly have, and which each or either of us severally hath, in and to the increase of the females of said slaves, which have happened since the making of the aforesaid bill of sale and deed, or which may hereafter happen; and also all the right, title, interest and claim, which we jointly have, and which each or either of us severally hath, in and to the personal property, of every description whatsoever, consisting of horses, mules, cattle and hogs, and all other property embraced in said deeds; and also all the rights, claims and demands, which we jointly have or may have, or each or either of us hath or may have, to hires, rents and damages, against any, every and all persons, in the event of the termination of said chancery suit in favor of the defendants thereto; to have and to hold unto the said Matthew A. Marshall, and to his heirs and assigns, all the rights, titles, interests, claims and demands, both at law and in equity, which we can or may have jointly, and which each or either of us can or may have severally, in and to said real and personal property, under and by virtue of said bill of sale and deeds, or in any or either of them, or

which have accrued to us or either of us in respect to said property in any way whatsoever, as also all the rights, claims and demands to rents, hires and damages, which have or may accrue to us or either of us in said chancery suit, unto the said Marshall, his heirs and assigns, to his and their use and behoof forever; and all such right, title, interest, claim and demand, in and to said real and personal property, as we jointly have, and as each of us severally hath, we do promise, covenant and agree with the said Marshall, that we will, and that our heirs, executors and administrators shall, forever warrant and defend unto the said Marshall, his heirs and assigns. It is understood and agreed, by and between the parties to these presents, that if the said chancery suit shall be finally decided and determined against the defendants thereto, then, and in that event, the bargain and sale hereinbefore stated shall be of none effect, the said Marshall shall not be bound to pay the consideration hereinbefore mentioned, or any part thereof, and this instrument and conveyance shall thenceforth be inoperative and void. Witness our hands and seals, this 23d January, 1854.

> JAMES H. THOMPSON, [seal.]
> JOHN B. THOMPSON, [seal.]"

The defendants filed separate answers; denying the existence of the alleged mistake; insisting that the conveyance, a reformation of which was sought by the bill, was incomplete and ineffectual, was champertous, was within the statute of frauds, and was inoperative and void, because the property embraced in it was, at the time of its execution, in the adverse possession of a third person; and demurring to the bill, for want of equity..

On final hearing, on pleadings and proof, the chancellor overruled the demurrer, and rendered a decree for the complainant; and his decree is now assigned as error.

WM. BOYLES, with J. L. SMITH, for appellant.—1. The instrument sought to be reformed is incomplete and ineffectual, because signed by only one of the parties to the contract. Not being executed by the complainant;

Thompson v. Marshall.

and therefore not binding him, it is wanting in that mutuality and reciprocity which are necessary to constitute a valid contract.—Chitty on Contracts, 11, 15, 16, 350; 12 Johns. 191; 27 Ala. 629; 30 Ala. 366; 13 Ala. 835; 10 Ala. 916.

2. As a conveyance of the land, said instrument is void and inoperative, because neither attested by a witness, nor acknowledged by the party signing it.—Code, §§ 1266–67. The contract being entire, if part of it is inoperative, no part can stand.—Chitty on Contracts, 272, note 1; 15 Pick. 159; 5 Cowen, 162; 30 Ala. 679.

3. The contract is void under the statute of frauds, as to the complainant, because there was no writing signed by him, nor was any part of the purchase-money paid, nor was he put in possession of the property.—Code, § 1551; Chitty on Contracts, 340, 352; 6 East, 307; 11 East, 142, note. Not being binding on the complainant, he cannot enforce it against the defendant.—Authorities cited in 1st paragraph, *supra*.

4. At the time the contract was entered into, the property was in the adverse possession of a third person; consequently, the sale is void.—5 Mass. 236; 11 Mass. 554; 3 Mass. 573; 2 How. (Miss.) 347; 5 Peters, 436; 8 Johns. 120; 1 N. C. Rep. 114; 4 Kent's Com. 446; 3 John. Ch. 101; 24 Wendell, 587; 1 Peters' C. C. 49; 1 Munford, 162; 2 Bacon's Abr. 186. The deed being void on this account, no act done under it can render it valid.—2 Parsons on Contracts, 264, and cases there cited.

5. The contract is void for champerty.—Poe v. Davis, 29 Ala. 683; 18 Vesey, 127; 3 Vesey, 493; 7 Bing. 378; 3 Sandf. 429, and cases there cited. That parol evidence was admissible, to prove the complainant's promise to pay the costs of the suit, see 4 J. J. Mar. 121; 1 McLean, 194.

6. The complainant admits his discovery of the alleged mistake more than three years before the filing of the bill, and shows no excuse for his unnecessary delay.

T. REAVIS, *contra*.—1. The lapse of three years after the discovery of the mistake, before the filing of the bill

to correct it, is not unreasonable in itself, nor sufficient to bar the right to relief on the ground of laches. If it were, however, the delay in this case is satisfactorily explained by the defendant's insolvency, and the complainant's repeated efforts to get the mistake corrected without the expense of a chancery suit.

2. If the deed be void as to the land, for want of attestation, that would be no objection to having the mistake corrected, so as to relieve Marshall from paying the wrong note. So far as the title to the personal property is concerned, a witness to the deed was not required; nor was a witness necessary, at common law, to a deed for land.—2 Bla. Com. 307, note 18. The Code directs the attestation of a witness, but does not declare the deed void for want of it.

3. Marshall accepted the deed, although he did not sign it, and thereby bound himself to performance; and having performed all the stipulations on his part, and that performance having been accepted by Thompson, the contract was binding on the latter. These rules apply as well to the statute of frauds as to mutuality.—Phelps v. Townsend, 8 Pick. 302; Wardens v. Robertson, 5 Man. & Gr. 131, mar.; Wetumpka Railroad Co. v. Hill, 7 Ala. 772; 1 Parsons on Contracts, 376.

4. The contract is not obnoxious to the charge of maintenance. The complainant was a party to the chancery suit, and had a legal interest in defending it; consequently, he had a right to purchase the interest of a co-defendant.—Thalhimer v. Brinkerhoof, 3 Cowen, 623; McCall v. Capehart, 20 Ala. 521. A contract for the purchase of property which is in litigation is valid, provided the purchaser does not undertake to pay any costs.—2 Story's Equity, §§ 1048 a, 1050; 4 Durn. & East, 340; 5 Bing. 309; Camp v. Forrest, 13 Ala. 119; 3 Cowen, 623. The written contract contains no stipulation for the payment of costs, and parol evidence could not be received to add that stipulation to it.

5. The facts do not sustain the defense of adverse possession. It appears that James Thompson, the plaintiff in the chancery suit, had obtained a writ of seizure, under

which the possession of the property was restored to him, and had given bond to have it forthcoming to abide the final determination of the suit; and that he had conveyed it to the sureties on his bond, as an indemnity against their liability. On these facts, the property was in the custody of the law, and the doctrine of adverse possession does not apply.—Atwood v. Pierson, 9 Ala. 656; Jackson v. Gewin, 9 Ala. 114. Moreover, if there had been an adverse possession of the property, that would not affect the validity of the deed *inter partes.*—Harvey v. Carlisle, 23 Ala. 635; Abernathy v. Boazman, 24 Ala. 189.

A. J. WALKER, C. J.—We need not inquire, whether, for the want of the attestation of one witness, or an acknowledgment in pursuance of the statute, the conveyance to the appellee is ineffectual to pass the title to the real estate described in it.—Code, §§ 1266–1267. It embraces personalty as well as realty, and its invalidity as to the realty would not impair the right to a reformation of the contract sought by the bill.

[2.] The complainant has not been guilty of such laches as to deprive him of the right to the relief prayed.

[3.] The mistake alleged in the bill is proved by the evidence. It is contended, however, that there can be no reformation of the contract, because it involves the offense of champerty, or maintenance. The features of the contract referred to, as supporting the charge of maintenance, are, that the complainant became a purchaser, pending a suit to rescind the conveyance under which his vendor held; that he takes a transfer, not only of the property in litigation, but also of such "rents, hires and damages," as might accrue in the suit for rescission; and that, as shown by parol evidence, he assumed a liability for his vendor's share of the costs and expenses of the suit.

The complainant in this case was a party to the suit for rescission. After the purchase of his vendor, and before the commencement of the suit to rescind the sale to his vendor, he bought the crop of cotton upon the land sold to his vendor; and one of the objects of the suit for rescission was, to charge the complainant in this case,

Marshall, on account of the crop of cotton so purchased by him. He was charged in the bill to have taken the cotton with notice of the fraud, upon which the prayer for relief was predicated. From these facts it results, that Marshall, the complainant in this case, had an interest in the suit for a rescission, in common with his co-defendant, from whom he purchased pending the suit against them. He and his vendor had a community of interest in resisting the rescission sought, because fraud in the transfer to the latter, and a consequent right of rescission, was alleged as the common cause of relief against both. Because the complainant in this case was thus interested with his vendor in the suit pending at the time of his purchase, he is not chargeable with maintenance.

Maintenance, of which champerty is a species, is said to signify " *an unlawful taking in hand or upholding of quarrels or sides, to the disturbance or hinderance of common right.*" 1 Hawkins' Pl. 454. It is also said to be "*an officious intermeddling in a suit that in no way belongs to one, by maintaining or assisting either party, with money or otherwise, to prosecute or defend it.*"—4 Bla. Com. 134. The gist of the offense is, that the intermeddling is *unlawful ;* that it is *officious,* and in a suit *which no way belongs* to the intermeddler. This essential element of the offense is absent here. The suit for rescission was as well the suit of the complainant as of his vendor. The most efficient mode of protecting himself against a decree was to contest the point upon which the liability of his co-defendant, from whom he purchased, depended. The intermeddling of one with a suit, in reference to which he occupies such a relation, has never been considered officious, or unlawful; but has always, upon the plainest dictates of reason and justice, been sanctioned. Hawkins, in treating of the question, how far acts of maintenance are justifiable in respect of an interest in the thing in variance, lays down the doctrine, that those who have either a certain or a contingent interest in land, or who have a common interest with the party in the same thing, as in a way, church-yard, or common, may intermeddle in suits pertaining to such matters.—1 Hawkins' Pl. 456, 457, 458.

Upon the same principle, which underlies the examples put by Hawkins, it has been decided, that a second mortgagee may lawfully purchase the interest of a prior mortgagee, which was in litigation, and contract to indemnify the latter against past and future costs, where the claim asserted against the prior mortgagee might affect the second mortgagee.—Hunter v. Daniel, 4 Hare, 420. And it has been decided, that where several proprietors of land in a parish have a common interest in resisting a claim of tithes, asserted against tenants of the respective lands, one of them would not perpetrate the crime of maintenance, by assisting in suits brought to enforce the claim as to other lands than his in the parish. Findon v. Parker, 11 M. & W. 675. And in Massachusetts it has been held, that where two persons had distinct rights to the exclusive enjoyment of a patent at different places, near each other, a contract by one to prosecute a suit for the infringement of the other's exclusive right to the enjoyment of the patent in the particular locality, in consideration of one-half the recovery, was not champertous.—Call v. Calff, 13 Metc. 362. This last decision is put upon the ground, that as the two places were near each other, the unauthorized use of the patent in one place would diminish the value and profits of the patent in the other; and that, therefore, each had an interest in preventing the infringement of the other's right. The elementary writers upon equity also assert the principle, that the doctrine of champerty and maintenance can not be applied to one having an interest in the subject in dispute.—2 Story's Eq. Ju. 1048 a; 2 Spence's Eq. Jur. 872. And this court itself, in McCall v. Capehart & Harbin, (20 Ala. 521,) has recognized and acted upon the same principle.

[4.] It is contended, that the property conveyed by the deed sought to be reformed was adversely held at the time of the conveyance. If that be so, it makes no difference in this case; for the deed would, nevertheless, be valid *inter partes.*—Harvey v. Carlisle, 23 Ala. 635; Abernathy v. Boazman, 24 Ala. 189.

[5.] If the complainant's promise to discharge the du-

ties imposed upon him by the contract specified in the instrument to be reformed is within the statute of frauds, it would not, of itself, be a sufficient reason for refusing to reform the instrument. The instrument itself is in writing. If the complainant had refused to perform the contract on his part, there might be some reason for withholding the desired decree of reformation. But no reason for refusing the decree exists, when the complainant does not seem to have omitted the performance of any duty imposed upon him by the contract.

[6.] We do not concur with the counsel for the appellant in the position, that the instrument described in the bill was incomplete until it was executed by the complainant. It was binding upon the defendants as soon as it was delivered.

The decree of the chancellor is affirmed.