# Carlisle *et al. v.* Wilkins's Administrators.

### *Bill in Equity for Foreclosure of Mortgage.*

1. *Assignment of mortgage ; subrogation of creditor to rights of surety.* — When a mortgage of land given by the principal debtor to his surety for indemnity against the debt, is transferred by the surety to the personal representative of the deceased creditor, in consideration of his release from liability on the debt, the transfer will be upheld in equity as an equitable assignment of the mortgage, although it contains no technical words of conveyance, and is neither attested nor acknowledged as a deed ; and the mortgage may be foreclosed by the assignee.

2. *Bankruptcy of mortgagor and mortgagee ; rights of assignee of mortgage.* — When a mortgage is given by the principal debtor to his surety, and is transferred by the latter, for valuable consideration, to the creditor, the subsequent discharge in bankruptcy of the principal and surety does not destroy the lien of the mortgage, nor affect the assignee's right to foreclose it.

3. *Liens of mortgage and execution issued on judgment rendered during war.* — The lien of a mortgage, made and recorded in 1866, while an execution was in the hands of the sheriff, issued on a judgment rendered during the late war, is superior to that of the execution, or of the purchaser at the execution sale.

APPEAL from the Chancery Court of Lee.

Heard before the Hon. B. B. McCRAW.

The bill in this case was filed on the 12th December, 1870, by the personal representatives of John L. Wilkins, deceased, and sought to foreclose a mortgage of certain lands, which was executed by W. G. Carlisle, one of the defendants, on the 4th June, 1866, and was given to indemnify George F. Taylor against liability as his surety on a note for $700, payable on the 25th December, 1860, to J. Y. Trammell, as the executor of said John L. Wilkins. The mortgage was duly acknowledged on the 29th June, 1866, and was left for record in the office of the probate judge on the same day. The said execu-

tor made a final settlement of his accounts in 1860, or 1861, and resigned, and he was succeeded in the administration by Geo. S. Turner, into whose hands Carlisle's said note came as assets, and to whom said mortgage was transferred by said Taylor on the 8th February, 1868. This transfer, or assignment, was made in consideration of Taylor's release and discharge from liability on Carlisle's note, and was in these words: "I hereby transfer the within mortgage, together with all the rights, powers, privileges therein granted to me, to George S. Turner, administrator with the will annexed of John L. Wilkins, deceased, with power to sell in my name, or in his own as transferee;" which was signed by said Taylor, but was neither attested, nor acknowledged as a deed. In February, 1870, said George S. Turner made a settlement of his administration, and resigned, and turned over to his successors in the administration, who are the complainants in this suit, the said note and mortgage, as assets of said estate.

In October, 1866, a portion of the land conveyed by the mortgage, about six hundred acres, was sold by the sheriff of Chambers county, in which county the lands were situated, under an execution against said W. G. Carlisle; at which sale, said Geo. S. Turner and one John Huguely became the purchasers, and received the sheriff's deed. This execution was issued on a judgment against said Carlisle, rendered by the circuit court of said county, on the 26th April, 1861, and it was in the hands of the sheriff when the mortgage above described was executed. Geo. F. Taylor was adjudged a bankrupt, on his own petition, on the 13th February, 1868. Carlisle also was adjudged a voluntary bankrupt in December, 1867. In the schedule of his property, filed with his petition, he included the land conveyed by the mortgage; and at the assignee's sale he became the purchaser of it. Huguely, after his purchase at the sheriff's sale, executed a mortgage on the land to Hall, Moses & Co., and they were joined with him as defendants to the bill. Said W. G. Carlisle and the personal representatives and heirs-at-law of said Geo. S. Turner, who had died, were also made defendants.

An answer was filed by Carlisle, denying the validity of the mortgage, on the ground that, at the time he signed it, "he was bankrupt in fortune from the results of the war, and bankrupt in brains from excessive intoxication;" that he had then filed his petition in bankruptcy, with the knowledge of said Taylor, and was legally incapacitated to make any valid contract. An answer was filed by Hall, Moses & Co., asserting the validity of the sheriff's sale under execution, and the superior lien of the execution over the mortgage, and insisting that the lands not sold by the sheriff should be first subjected

[Carlisle *v.* Wilkins's Administrators.]

to the complainants' demand under the mortgage. Demurrers to the bill, for want of equity, were filed by Huguely and the legal representatives of Turner, but were overruled by the chancellor; and decrees *pro confesso*, for want of an answer, were afterwards taken against them.

By agreement of counsel, filed with the register on the 2d August, 1872, it was admitted that the sheriff's sale was made under an execution issued on a judgment against Carlisle, in favor of Devlin, Hudson & Co., rendered by the circuit court of Chambers county on the 26th April, 1861; that executions had been issued on said judgment on the 8th May, 1861, the 7th December, 1865, and the 19th June, 1866; that the sale was regularly advertised and made according to law; and "that the officers of said circuit court, at the time of the rendition of said judgment, held their offices by virtue of a commission from the rightful government of Alabama before the passage of the ordinance of secession, and held said court under laws passed by said rightful government." A term of the chancery court seems to have been held on the 1st August, 1872, as the depositions are marked "opened by order of court" on that day. At the December term, 1872, the chancellor rendered a decree for the complainants, which recites that the cause was submitted "at the last term," on bill, answers, pleadings, and proof; and he ordered a reference of the matters of account to the register. The register's report was made and confirmed at the same term, and a final decree was rendered, ordering a sale of the mortgaged premises, unless the amount due to the complainants, as ascertained by the register's report, was paid within a specified time.

At the June term, 1873, a decree was rendered in the cause in these words: "This cause having been submitted at the last August term, and a decree rendered therein; but the submission having been omitted to be entered upon the docket, it is now ordered that the same be entered *nunc pro tunc*, as of the said last August term, as follows: In this cause it is ordered, that the testimony taken be published, and that the register take a note of such as is offered in evidence, and the cause is submitted upon the pleadings and proof; and the following proof is submitted, to wit: The complainants offer, 1st, the deposition of Geo. F. Taylor and the exhibit thereto; 2d, the deposition of W. Dorman; 3d, the deposition of Elizabeth Wilkins. The defendants offer, 1st, the deposition of W. G. Carlisle; 2d, the certificate in bankruptcy of said W. G. Carlisle. And the cause is held for consideration in vacation."

The appeal is sued out by Carlisle and Hall, Moses & Co., and errors are separately assigned by them. The errors assigned by Carlisle are: "1. The court erred in decreeing in

favor of the complainants below. 2. The decree was against the weight of the evidence. 3. The court decreed finally without any evidence. 4. There was no submission of evidence, or note of evidence, or order of submission, on which the court could render any decree. 5. The court erred in making the order *nunc pro tunc* at the June term, 1873, because there was no sufficient evidence of record to authorize it. 6. The submission was made at a time not authorized by law, and at a time when no legal court could have been held in said district." The errors assigned by Hall, Moses & Co. are : " 1. The court erred in decreeing the sale of the lands mortgaged to them by Huguely. 2. The court erred in not decreeing the sale first, for the satisfaction of complainants' debt, of the land not mortgaged to them by Huguely. 3. The court erred in rendering the final decree without any evidence. 4. The court erred in rendering a final decree without any order of submission and note of the testimony. 5. The court erred in making the entry *nunc pro tunc.* 6. The court erred in rendering a decree under a submission at a time not authorized by law."

J. J. ROBINSON and W. H. BARNES, for appellants. — 1. The entry *nunc pro tunc* shows on its face that there was no order of submission and note of the testimony entered on the docket, and the transcript shows that there was no such entry on the minutes. The decree *nunc pro tunc* cannot, then, be sustained. *Hudson* v. *Hudson,* 20 Ala. 364 ; *Tanner* v. *Hayes,* 47 Ala. 722; Shep. Digest, 396, § 32.

2. Without any note of the testimony offered, the chancellor's decree cannot be sustained.

3. The note of the testimony, incorporated in the entry *nunc pro tunc,* omits the agreement of counsel, on which the rights of Hall, Moses & Co. depend.

4. This court will judicially know that the terms of said chancery court are held in May and November. The order of submission in August, 1872, was, therefore, void. *Davis* v. *The State,* 46 Ala. 80.

5. The four hundred acres of land embraced in Carlisle's mortgage, and not embraced in the sale by the sheriff, should have been first sold. *Eslava* v. *Lepretre,* 21 Ala. 521.

6. The judgment rendered in 1861, under which the sheriff's sale was made, was rendered by a court held by officers deriving their commissions from the rightful government of Alabama, and the ordinance of secession being a nullity, as this court holds, it could not render invalid official acts rightfully performed by officers legally appointed.

[Carlisle v. Wilkins's Administrators.]

E. G. RICHARDS, with THOS. H. WATTS, *contra.* — 1. A mortgage, given to a surety for his indemnity, enures to the benefit of a co-surety, or of the creditor; and the latter is entitled to be subrogated to all the rights of the former. *Toulmin* v. *Hamilton*, 7 Ala. 367; *Steele* v. *Mealing*, 24 Ala. 285; *Branch Bank* v. *Robertson*, 19 Ala. 798; *Cullum* v. *Branch Bank*, 23 Ala. 797.

2. The record of the mortgage was notice to all the world. *Adams* v. *Steele*, 21 Ala. 534.

3. The judgment rendered in 1861, after the passage of the ordinance of secession, created no lien on the land. *Ray* v. *Thompson*, 43 Ala. 434; *Foster* v. *Moody*, at January term, 1873.

4. The discharge in bankruptcy of Carlisle did not affect the right to foreclose the mortgage. *Mahone* v. *Haddock*, 44 Ala. 99; Bankrupt Law, § 14.

5. The record does not show that the defendants made the proof necessary to establish their title under a purchase at sheriff's sale. *De Vendell* v. *Hamilton*, 27 Ala. 156.

B. F. SAFFOLD, J. — The appellees, as the administrators of John L. Wilkins, sought to enforce a mortgage of land, which the appellant, Carlisle, executed, on the 4th of June, 1866, to George F. Taylor, as a security for the payment of a promissory note payable to Trammell, executor of the said John L. Wilkins, and made by Carlisle, with Taylor as his surety. The note and mortgage were assets of the estate of Wilkins, Taylor having assigned the mortgage to Turner, administrator of Wilkins, and came to the complainants as his representatives by proper transfers and assignments. The mortgage was acknowledged on the 29th of June, 1866, and was filed for record on the same day. The note was made on the 2d of May, 1860. A portion of the lands so mortgaged were purchased, in October, 1866, by George S. Turner and John Huguely, at a sale under execution issued June 19, 1866, preceded by executions issued December 7, 1865, and May 8, 1861, on a judgment against Carlisle, in favor of Devlin, Hudson & Co., rendered on the 26th of April, 1861. Taylor assigned the mortgage to Geo. S. Turner, administrator with the will annexed of Wilkins, on the 8th of February, 1868, and became bankrupt on the 13th of February, 1868. He never paid anything on the note. Carlisle was adjudged a bankrupt in December, 1867; and on his assignee's sale of his effects, he purchased the land conveyed by the mortgage. The rights of all the other defendants are dependent upon the facts above stated. The assignment of the mortgage which Taylor made to Turner was not in words conveying the prop-

erty, but was as follows: "I hereby transfer the within mortgage, together with all the rights, powers, privileges therein granted to me, to George S. Turner, administrator with the will annexed of John L. Wilkins, deceased, with power to sell in my name, or in his own, as transferee." The consideration of this transfer was Taylor's release from further liability as Carlisle's surety on the note.

1. There can be no doubt that the complainants are entitled to the benefit of Taylor's mortgage, both on the ground of the general doctrine, that any security taken by a surety from his principal enures to the creditor, and because of the consideration passing to Taylor. Although his assignment to Turner does not contain legal terms of conveyance of the property itself, and is neither witnessed nor acknowledged as a deed is required to be, yet it is in such condition as would justify a court of equity in reforming it into a proper assignment, between them, or treating it as such. *Thompson* v. *Marshall*, 36 Ala. 504; 1 Story's Eq. Jur. § 115; *M. & C. P. R. R. Co.* v. *Talman & Ralston*, 15 Ala. 472. A mortgage of land partakes of the twofold nature of real and personal property.

2. The discharge in bankruptcy of Carlisle and Taylor does not destroy the right of the complainants to the security of the mortgage, given to them by the general law. The bankrupt law preserves such a lien, and does not so much contemplate the destruction of the debt as a restraint of the remedy.

3. The question is broadly presented, whether a sale under an execution, issued on a judgment recovered in a court of the State during the late rebellion, defeats a mortgage made and recorded before the sale, but during the time the execution was in the hands of the sheriff. In *Martin* v. *Hewitt* (44 Ala. 418), and *Barclay* v. *Blocker*, at the last term, it was held that it would not, and that such judgments would not support executions. This has been the general tenor of the decisions of this court since *Martin* v. *Hewitt*. In *Foster* v. *Moody*, at January term, 1873, a sheriff's deed, based on a sale under execution issued in August, 1866, on a judgment rendered in the circuit court of Alabama in September, 1862, was held to be a superior title to a sheriff's deed, based on a subsequent sale under a junior judgment. The ground of this decision was, that the provisional government, existing in the State between July, 1865, and July, 1868, allowed the enforcement by execution of the Confederate judgments; and as this was a case of completed execution, it ought not to be disturbed. The judgments rendered in the state courts during the Confederate domination have never been regarded otherwise than as valid, though not possessed of all the properties of domestic judgments. In *Bush* v. *Glover*, 47 Ala. 167, the issue and

service of a summons and complaint in February, 1861, were deemed sufficient to support a judgment by default, rendered in September, 1866. The decisions of this court, referred to above, have been a rule of property until the subject of them has wellnigh passed away. Whatever may be the differences of opinion in respect to the properties which should be ascribed to these peculiar judgments, it will do no good now to treat the matter as an open question. Settlements have been made and property acquired on the faith of the construction heretofore given to them, which it would be wrong to disturb. The purchasers at the sheriff's sale were apprised of the mortgage at the time of their purchase. The mortgagee probably did not know of the execution in the hands of the sheriff. We decide that the lien of the mortgage must prevail over the lien of the execution.

The terms of the chancery court for Lee county are required to be held on Thursday after the first Monday after the fourth Monday in May, and on the first Monday in November, and may continue at each term until the business of the court is disposed of. It does not appear that any term of the court was held at an improper time. The entry *nunc pro tunc* of the submission of the cause and the note of evidence inflicts no injury on the appellant, whether made improperly or not. It does very well, standing of the term at which it was made. All of the evidence found in the transcript has received consideration.

The decree is affirmed; with an amendment, requiring the sale first of that portion of the land not sold under the execution.