# Christian Church at Pilgrim's Rest v. Littleville Camp No. 258, Woodmen of the World, et al.

### Bill to Reform Deed and for Other Relief.

(Decided November 27, 1913.  64 South. 9.)

1. *Reformation of Instrument; Voluntary Conveyance; Relief.*—A voluntary conveyance will not be reformed unless by consent of all the parties thereto, in favor of the grantee as against the grantor.

2. *Same; Deeds; Change of Conveyance.*—The recitals of the deed considered and it is held that it could not be reformed so as to state a conveyance to "all Christian denominations" as the allowance of such a change would render the deed void for uncertainty, as well as be unauthorized as changing the conveyance from a form of trust into a grant of the legal title to the supposed beneficiary.

3. *Frauds, Statute of; Easements in Gross; Validity.*—Where certain lands were conveyed to a church, and to a camp of Woodmen, for church and lodge uses, a parol agreement authorizing the use of the lower floor as a place of worship by Christian denominations, Mormons and Catholics excluded, was in the nature of an easement in gross, and was not enforceable as it did not rest in grant, prescription, or estoppel in pais.

4. *Specific Performance; Real Property; Right to Use; Consideration.*—Not being based on a valuable consideration, an alleged parol agreement authorizing the use of a lower floor of the building as a place of worship by Christian·denominations cannot be specifically enforced.

APPEAL from Colbert Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by the Christian Church at Pilgrim's Rest, against the Littleville Camp, No. 258, Woodmen of the World, and others to reform a deed. From a decree denying relief, complainant appeals. Affirmed.

The bill makes the following case:  On July 29, 1910, one Murray and Bullington executed the following deed: "State of Alabama, Franklin County.  Know all men by these presents, that we, Sally Murray, and M. C. Murray, and J. D. Bullington, for and in consideration of $25, which is a donation [of] Pilgrim Rest Church and W. O. W., but to all Christian denominations, Morman and Catholic excluded, to us paid in hand by the church and Woodmen, the receipt whereof is hereby acknowledged, do hereby grant, bargain, sell, and convey unto said church and Woodmen the following described property:  [Here follows description.] To have and to hold unto the said Pilgrim Rest Church and W. O. W., and their heirs and assigns forever. And we do, for our and our heirs, executors, and administrators, covenant with said church and W. O. W., heirs and assigns, that we ——— lawfully seised in fee simple of said premises, they are free from all incumbrances, and that we have a good right to sell and convey the said property, and that we will, and our heirs, executors and administrators shall, warrant and defend the same to Pilgrim Rest Church and W. O. W., heirs executors, and assigns, forever, against the lawful claims of any person whatsoever."  Signed by the parties, witnessed and separately acknowledged before a justice of the peace, and duly recorded.

At the time this deed was made, Littleville Camp, No. 258, was composed of about 18 members, some of whom were Methodists, and some Christian or Campbellites. Afterwards a two-story building was erected on the lot, with contributions made by members of the Christian and Baptist Churches and Littleville Camp, No. 258, with the understanding and agreement that the first story should be used for a place of worship by the Christian denomination named in the deed, and the upper or

second story to be the home or place of meeting of Littleville Camp, No. 258, W. O. W. After the building was completed, about August, 1910, a Christian church was organized, with pastor and officers, who have since used the lower story for religious worship on the third Sunday of each month, and Sunday school on Sunday afternoon. The Baptist Church has used the same floor for the same purposes consecutively on the first Sunday of every month, and Sunday school every Sunday morning; the other denominations not having availed themselves of any rights they might have had in the premises. This alternating use of the lower floor of the building was not interrupted until August, 1911, when, acting under a resolution passed by said camp of Woodmen, its agents took full control of the building, changed the lock, and have since excluded the complainants, the Christian Church at Pilgrim's Rest, from any further use of the building.

It is charged in the bill that the letters "W. O. W." in the deed mean and have reference to Littleville Camp, No. 258, Woodmen of the World, and that the expression in the deed "but to all Christian denominations, Mormon and Catholic excluded," mean and were intended to be understood to be all Christian denominations, except the Mormon and Catholic.

The bill prays for general relief, and specifically, first, that the deed be reformed so as to correctly name the grantee as Littleville Camp, No. 258, Woodmen of the World, and all Christian denominations, except the Mormon and Catholic; second that the agreement that the first story of the building should be used by Christian denominations be enforced, and the said camp of Woodmen be enjoined from interfering with complainant's use of the building as practiced, and as they may have a right; and, third, to ascertain and decree the

[Chris'n Church at Pilgrim's Rest v. Littleville Camp No. 258, W.O.W.]

right of complainant, and of the Baptist Church to worship in the building.

The respondents to the bill are the said Littleville Camp, No. 258, the Baptist Church at Pilgrim's Rest, and the grantors in the deed, all of whom, except Murray, file joint demurrers on the following grounds substantially: (1) No equity; (2) complainant has no right in the land; (3) complainant had no existence when the deed was made; (4) if reformed as prayed, the deed would still be void for uncertainty; (5) it is not shown who the Christian denominations are; (6) it does not appear that the grantors intended other grantees than those named; (7) no legal injury is shown to complainant; and (8) no consideration moved from complainant. These demurrers were sustained.

KIRK, CARMICHAEL & RATHER, for appellant. Under the circumstances in this case an injunction will be allowed without compelling complainant to establish title by an action at law.—1 High on Injunction, sec. 256; 38 Cyc. 97; *Fullington v. Kyle L. Co.*, 139 Ala. 242; 3 Johns. Ch. 282; 102 Ga. 181. Complainant had no remedy at law.—*Gewin v. Mt. Pilgrim Baptist Church*, 166 Ala. 345. The complainant acquired an interest in the building and lot although not incorporated at the time the deed was made.—*Work v. Rper*, 79 Ala. 142; 169 Ala. 345; 166 Ala. 348; *Allison v. Little*, 85 Ala. 512.

WILLIAM H. SHAW, for appellee. To reform the deed as prayed would render it void for uncertainty.— *Gardner v. Knight*, 124 Ala. 273. Complainant had no legal existence at the time of the execution of the deed, and hence, is a mere volunteer.—47 S. E. 505; 51 S. E. 288; 18 Enc. P. & P. 786. The agreement was without

consideration, and hence, will not be reformed in equity. —28 A. & E. Enc. of Law, 163; 80 N. E. 318; 31 N. J. E. 594; 74 N. E. 126; *Miller v. Morris,* 123 Ala. 164

SOMERVILLE, J.—It is a general rule of equity, the reasons for which are too obvious to require explanation, that a voluntary conveyance will not be reformed in favor of a grantee as against his grantor, unless all the parties consent thereto.—34 Cyc. 928, and cases cited. A few cases have recognized an exception to the rule where there was a "good," though not a valuable, consideration, and valuable improvements have been made by the grantee, or his subvendee.—*Cummings v. Freer,* 26 Mich. 128; *Price v. School Directors,* 58 Ill. 452.

The deed here sought to be reformed was purely voluntary, without consideration either valuable or good, and the prayer for reformation is without equity.

Moreover, the reformation sought would avail complainant nothing, since a conveyance to "all Christian denominations," with or without the exception stated, would be wholly void for uncertainty. Again, conceding that the word "but" in the first paragraph should have been "and," and thus have indicated a trust donation in favor of "all Christian denominations, Mormon and Catholic excluded," this would not authorize a court to convert the deed from the form of a trust into the grant of a legal fee to the supposed beneficiaries.

The equity of the bill, if any it has, must be sought in the averment of a parol agreement between the camp of Woodmen, as holder of the legal title, and members of the Christian and Baptist Churches, by which the building, to be erected by their joint contributions, should be used, as to its lower floor, as a place of worship by Christian denominations, Mormon and Catho-

lic excluded. By specific. prayer it is sought to compel the performance of this agreement, and to enjoin any interference with complainant's customary use of the building.

This agreement is anomalous in its terms, and it is not at all easy to say at first blush whether it is a mere license to do a series of acts upon the licensor's land, or whether it is a lease vesting in its beneficiaries a possessory interest in the nature of a tenancy at will, or whether it is an easement giving a right of entry and a specific limited use in perpetuo.

The distinctions are somewhat subtile, and often elusive; but we are inclined to the view that the benefit here claimed is in the nature of an easement in gross, and, not resting in either a written grant, or prescription, or an estoppel in pais, is void and unenforceable.

But, however the agreement might be regarded, it is not founded upon a valuable consideration—at least so far as is made to appear—and for that reason cannot be specifically enforced.—*A. C. Railroad Co. v. Long,* 158 Ala. 301, 48 South. 363; 36 Cyc. 544. And even if the agreement were supported by a valuable consideration, it is not sufficiently certain as to beneficiaries, terms, and stipulations to require a court to undertake its specific execution.—*Moon v. Crowder,* 72 Ala. 79; *Carlisle v. Carlisle,* 77 Ala. 339.

Complainant's theory, in one aspect, is that its possession under the parol agreement made with third persons for its benefit, coupled with valuable improvements, made or contributed to by it, gives it an independent equity to protection in the contemplated use of the building. There is, indeed, a line of cases from some other states which hold that "an oral gift of land, or promise to give land, followed by the vendee's taking possession of the land in pursuance of the promises,

and making valuable and permanent improvements in reliance thereon, may be enforced by a court of equity against the donor or his heirs, or grantees, with notice." —36 Cyc. 681, and cases cited. But we have not here a gift of land, and the doctrine itself is not in harmony with our statute of frauds as consistently construed by this court.

We concur in the conclusions of the chancellor, and the decree will be affirmed.

Affirmed.

DOWDELL, C. J., and McCLELLAN and SAYRE, JJ., concur.