[Wood, et al. v. Lett, et al.]

# Wood, *et al. v.* Lett, *et al.*

### Bill to Reform and to Specifically Perform.

(Decided February 3, 1916.   71 South. 177.)

1. **Husband and Wife; Contract of Wife; Coveture; Joinder.**—Where a contract for the exchange of land made between married women bears the mere signature of the husband, that is sufficient to indicate the assent of the husband, if the wives are otherwise bound by their signature.

2. **Specific Performance; Bill; Demurrers.**—Where such authority is not alleged in the bill it must be assumed that a husband had no written authority to contract to convey land belonging to his wife, where the question arises on demurrer to the sufficiency of a bill to specifically perform the contract.

3. **Same; Oral Contracts; Enforcement; Partial Performance.**—While, under the statute of frauds, a contract which is invalid, though partially performed, cannot be enforced against the party whose signature is insufficient, yet the filing of a bill for specific performance of a contract by such person is a sufficient compliance with the statute.

4. **Same; Wife's Land; Contract of Husband.**—Construing §§ 3355 and 4494, Code 1907, it is held that where the husband signed a contract to convey lands belonging to the wife for himself and as agent for the wife, having no written authortiy from his wife to convey her lands, the contract was not enforceable against the wife, as the husband did not join in the alienation since the wife was not bound by his signature, in the absence of express written authority.

5. **Frauds; Statute of; Effect.**—The statute of frauds does not avoid parol contracts, but merely lays down a rule of evidence by which the contract must be established, thus rendering them voidable at the election of the non subscribing party.

6. **Contracts; Consideration; Mutual Promise.**—While one promise is a sufficient consideration for another promise, no consideration can be established where the promise of one party is not enforceable against him, because of defective signature to the contract.

7. **Specific Performance; Contract of Wife; Validity; Enforcement.**—While equity may dispense with mere form and enforce a contract, which it does when it enforces a contract which is voidable under the statute of frauds for lack of proper evidence, it cannot enforce a contract of a wife to convey her lands, which is not properly signed by the husband, as that is a condition of the wife's power to contract.

8. **Same; Validity of Contract** —Where a contract could not be sufficiently enforced when made, because the signature of the husband assenting to a conveyance of the wife's realty did not comply with the statute, a subsequent tender of a deed signed by the wife and the husband was of no avail, as the other party was without recourse between the time of the signing of the contract and the tender of the deed.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by Mrs. J. E. Wood and another against Mrs. L. M. Lett and another, to reform a contract, and to specifically enforce it. From a decree sustaining demurrers to the bill, plaintiffs appeal. Affirmed.

H. K. WHITE, for appellant. GEORGE E. BUSH, for appellee.

SAYRE, J.—The original bill in this cause was filed by the appellant Mrs. Wood, a married woman, for the reformation of a contract in writing, purporting to be an agreement between appellee Mrs. Lett on the one part and appellant Mrs. Wood on the other, by which said appellee was to sell a certain tract of land to appellant, in exchange for which appellant was to convey a certain other tract, said tracts being owned in severalty by Mrs. Lett and Mrs. Wood respectively, and for the specific performance of the contract according to its alleged true intent and purpose. There were other stipulations, but they do not seem to affect the question raised by this appeal, and need no further reference. The instrument, exhibited with the bill as amended, witnessed an agreement for the exchange of lands such as we have noted, "for and in consideration of the sum of one dollar in hand paid by Mrs. Lett and other valuable consideration," and was by its terms to be performed after abstracts of title should be "brought down and turned over to each contracting party within ten days." Apart from the sum of $1, which, according to the recital of the instrument, passed from the defendant (appellee) to the complainant (appellant), no consideration other than mutual promises passed between the parties. There was, of course, no mutual delivery of possession, as was the case in *Goodlett v. Hansell*, 66 Ala. 151. The cash consideration passing from defendant to complainant might seem to indicate a purchase by the former of an option to have an exchange, had the agreement been properly executed by the latter; and, had this instrument on both parts been completely executed to affect the interests of the parties in their respective lands, then, of course, these mutual promises to convey, apart from the option, would have constituted valuable and sufficient considerations each for the other. But, as the court observed in regard

[Wood, et al. v. Lett, et al.]

to an analogous agreement in *Linn v. McLean*, 85 Ala. 250, 4 South. 777, which is the major and which the minor factor it is not so easy to determine. We shall assume, however, agreeably with what appears to be complainant's view of the case, that the instrument in question witnessed merely. mutual agreements to convey tracts of land each to the other.

(1, 2) This instrument was signed at the foot by the husbands of the respective owners. But their names did not appear in the body of the instrument, nor did they sign as contracting parties; the only purpose of their signatures being to witness their assent to and concurrence in the agreement on the part of their respective wives, for which purpose their mere signatures would have been sufficient, had the wife been otherwise bound.—*Rushton v. Davis*, 127 Ala. 277, 28 South. 476. It was also subscribed, to use the term employed by the statute of frauds, by Mrs. Lett, while Mrs. Wood's execution of it was evidenced in this manner: "Mrs. J. E. Wood, by J. S. Woods, Agt." In the bill as last amended, J. S. Wood, the husband, then for the first time coming in as a party complainant, it is averred that: "Complainant Mrs. J. E. Wood, acting through her husband, complainant J. S. Wood, entered into a [the] contract with both defendants."

It is nowhere made to appear that J. S. Wood had any written authority to execute the agreement as the agent of his wife. It must on demurrer be assumed that he had no such authority (*Knox v. Childersburg Land Co.*, 86 Ala. 180, 5 South. 578), and from the course adopted by complainant in meeting by successive amendments the several demurrers interposed to her bill, it is clear that this assumption is in accord with the fact.

(3) It has been determined in this court that this agreement, not having been subscribed by complainant, nor by any other person by her thereunto lawfully authorized in writing, as required by certain sections of the Code, to which we will refer, could not be enforced against her, even though the agreement had been partially performed.—*Morris v. Marshall*, 185 Ala. 179, 64 South. 312. But the question here is whether, in these circumstances, it can be enforced at her instance and for her benefit.

So far as the statute of frauds is concerned, it is the settled law of this court that all the purposes of that statute are satis-

fied, all just apprehension that the agreement will not be mutual in operation is removed, when the party who has not subscribed a contract for the sale of lands resorts to equity for its specific performance, thereby adopting the contract and rendering it obligatory upon himself. Such is the rule where the complainant is sui juris in respect of the contract he seeks to enforce. His submission to the court, that it may do equity in the premises, supplies that mutuality of remedy which is essential to the obligation of bilateral contracts.—*Linn v. McLean, supra; Chambers v. Alabama Iron Co.,* 67 Ala. 353.

(4) But the trouble with complainant's bill arises out of the fact that she was not sui juris in respect of the contract alleged. It arises out of her personal disability to enter into such contracts, except in a certain exclusive and mandatory manner prescribed by sections 3355 and 4494 of the Code. These sections require that (3355) : "Conveyances for the alienation of lands * * * must be signed at their foot by the contracting party, or his agent having a written authority."

And (4494) : "The wife * * * cannot alienate or mortgage her lands, or any interest therein, without the assent and concurrence of the husband, the assent and concurrence of the husband to be manifested by his joining in the alienation in the mode prescribed by law for the execution of conveyances of land."

The husband signed the instrument for himself and as agent for his wife, but he had no authority, such as the statute requires, for executing it in the name of the wife. Thereby he did not join in an alienation, nor in an agreement to alienate, executed by the wife in the manner prescribed by law for the execution of conveyances of land by her, nor can his joinder in this bill be accepted, on the doctrine of relation, as an equivalent for the requirement of the statute, which contemplates an assent and concurrence manifested in a particular and exclusive mode at the time of the execution and delivery of the contract. The obligation of the paper writing exhibited with complainant's bill must therefore, in equity as in law, be determined as of the time of its execution. There can be no doubt that in a court of law, or anywhere as against the wife, this agreement would be held to confer no color of right or interest.—*Scott v. Cotten,* 91 Ala. 629, 8 South. 783; *Rooney v. Michael,* 84 Ala. 585, 4 South. 421; *Blythe v. Dargin,* 86 Ala. 370.

[Wood, et al. v. Lett, et al.]

In *Morris v. Marshall,* and the other cases cited supra, and in still others of a similar character that might be cited, the effort was to enforce against the wife verbal executory agreements for the sale of her lands, whereas here the wife seeks to enforce such an agreement; but the consideration here in point is that those cases, which had no reference to the statute of frauds, proceeded expressly upon the theory that the wife had no capacity to alienate her lands, except as required by the Code; this consideration being elaborately demonstrated in *Blythe v. Dargin,* in which case the wife had signed and possession had been delivered. If the wife had any capacity to bind her conscience except in the specific mode prescribed by statute, that contract would have been enforced on the principle adopted by courts of equity in enforcing contracts not evidenced as provided by the statute of frauds, which is that such contracts, though not treated in the law courts as contracts at all, will, at the suit of the complainant, who has performed in part, be wholly executed in specie by courts of equity, where they are regarded as binding in conscience.—3 Pom. Eq. Jur. § 1297. In *Scott v. Cotten,* it was said that: "The wife is incapable to confer authority, resting in parol, upon her husband, or any other person, to make or sign a contract in her name; this is not contracting in writing in the meaning of the statute."

(5) The statute of frauds does not absolutely avoid parol contracts, but lays down a rule of evidence by which contracts within its influence are to be established, thus rendering them voidable at the election of the party who has not signed.—*Heflin v. Milton,* 69 Ala. 354; 2 Pom. Eq. Rem. § 817. Notwithstanding equity deals with agreements affecting titles to land defectively executed or evidenced under the statute of frauds, where they are within the competency of the parties, on principles different from those prevailing in courts of law, the courts have given different reasons for their decrees enforcing the specific performance of such agreements at the suit of nonsubscribing parties; and of this situation the eminent text-writer, to whom we have referred above, says that: "It is, on the whole, best to concede that the doctrine rests upon no basis of principle; that it was arbitrarily laid down by the earlier decisions which interpreted the statute, and has been followed by the great majority of subsequent cases; and that it is useless to account for or explain

it by reasons which conflict with other well settled rules."—
Pom. Spec. Perf. § 170; *Williams v. Graves,* 7 Tex. Civ. App.
356, 26 S. W. 334.

It is to be noted, however, that in all cases the contract must
possess all the elements and features necessary to the specific
enforcement of any agreement, except the written memorandum
required by the statute.—4 Pom. Eq. Jur. § 1409, note 1. Hence
this court has seemed careful heretofore to limit its ruling, en-
forcing contracts for the sale of lands at the instance of non-
subscribing parties, to cases in which the complainants were sui
juris in respect of the contracts which they sought to enforce.
The reason for this is not obscure.

(6) The line of decisions to which we have referred as deal-
ing with the statute of frauds does not controvert the proposi-
tion that the defendant's contract must rest upon a valuable con-
sideration. Now one promise is a good consideration for anoth-
er, but not "unless there is absolute mutuality of agreement, so
that each party has the right at once to hold the other to a pos-
itive agreement."—1 Parsons, Contr. star p. 448. "Where the
party assumes to make a contract in which a promise is a con-
sideration for a promise, and analysis shows that one of the
promises does not impose any legal duty upon the party making
it, such promise is not a consideration for the other promise."
—1 Page on Contr. § 304. Hence the necessity for a considera-
tion to support an option contract, commonly so called, separate
and apart from that which would, by acceptance, become the
consideration for the sale.—*Eskridge v. Glover,* 5 Stew. & P.
264, 26 Am. Dec. 344: *Bethea v. McCullough, infra,* 70 South.
680. Now complainant was not sui juris as to this agreement.
She was not subject to the will of her husband. The paper writ-
ing exhibited with the bill imposed no obligation on her, not
only for the reason that it did not properly evidence the agree-
ment alleged, but because the husband, since he had no author-
ity in writing from her to make the contract, did not join in an
agreement to alienate in the exclusive mode prescribed by the
sections of the Code quoted above, without which the alleged
agreement did not operate as an estoppel against either the hus-
band or the wife. It was contrary to the positive mandate of
the statute. It was no contract.—*Scott v. Cotten,* and cases in
that line, supra. "I known no jurisdiction which a court of equi-

[Wood, et al. v. Lett, et al.]

ty has to say, You may do that which the laws says you shall not do."—*Gould v. Womack*, 2 Ala. 83. "A party not bound by the agreement itself has no right to call upon the judicial authority to enforce performance against the other contracting party, by expressing his willingness to perform his part of the agreement. His right to the aid of the court does not depend upon his subsequent offer to perform the contract on his part, when events may have rendered it advantageous to do so, but upon its originally obligatory character."—*King v. Warfield*, 67 Md. 246, 9 Alt. 539, 1 Am. St. Rep. 384. In *S. & N. A. R. Co. v. H. A. & B. R. R. Co.*, 119 Ala. 105, 24 South. 114, the court quotes with approval as follows: "A contract, to be specifically enforced, must be mutual—that is to say, such that it might, at the time it was entered into, have been enforced by either of the parties against the other of them. Whenever, therefore, whether from personal incapacity, the nature of the contract, or any other cause, the contract is incapable of being enforced against one party, that party is incapable of enforcing it against the other, though its execution in the latter way might be free from the difficulty attending the execution in the former."—Fry, Spec. Perf. § 286.

(7) Equity may dispense with mere form, and that is a part of what it does when it enforces contracts which are voidable under the statute of frauds for lack of proper evidence; but under the statute here in point the concurrence of the husband, expressed in a particular mode, is a condition of the wife's power to contract. Unless the statute means this, it means nothing.

(8) By her original averment complainant showed that within 30 days after the agreement was entered into she and her husband executed and tendered to defendants a properly executed deed of the land, which by the agreement they were to convey to defendants, but that defendants refused to accept said deed, or to carry out the provisions of the agreement. Under the principles of law declared, this tender had no effect upon the rights of the parties. In the meantime defendant Mrs. Lett had no legal or equitable recourse against complainant, who might have refused to execute the agreement; indeed, she could not execute it unless the husband gave a new consent, and this he was free to withhold. Nor did his subsequent joinder in the bill relieve the difficulty of complainant's case. If the agreement for future

[Jefferson Plumbers & Mill Supply Company v. Peebles.]

conveyances had been lawfully executed by complainant, the joinder of her husband in a bill for its performance in specie, though he sought no relief, might have been proper enough as evidencing his submission to the court to perform so much of the decree to be rendered as would be for the benefit of the defendant. But neither his execution of the deed subsequently tendered nor his joinder in the bill can in justice to defendant be allowed to cure the defects in the original agreement. In fine, ·the alleged agreement was fatally lacking in mutuality of consideration and remedy; it was, in legal effect, nothing more than a voluntary offer on the part of Mrs. Lett to sell, revocable at her pleasure. The court will not consent to the specific performance of such an agreement.—*Roney v. Moss*, 74 Ala. 390.

Our conclusion is that the decree, sustaining appropriate demurrer to the bill, should be affirmed.

Affirmed. All the Justices concur.