15 So.2d 567

**HUGHES v. DAVIS.**

7 Div. 720.

Supreme Court of Alabama.

Nov. 11, 1943.

Hood, Inzer, Martin & Suttle, of Gadsden, for appellant.

STAKELY, Justice.

This is an appeal from a final decree of the equity court establishing a trust in real estate. In the trust so established, M. P. Hughes (appellant) is constituted the trustee, and Walter E. Trippe, alias W. M. Davis, now deceased, the beneficiary, with the rights of the beneficiary now vested in Annie V. Davis (appellee).

The appellant insists that (1) no trust was created because the creation of the trust rests in parol in violation of Code of 1940, Title 47, § 149, and (2) the trust, if created, was so altered by appellant and Walter E. Trippe, alias W. M. Davis, in his lifetime, as to vest title and ownership of the trust property in the survivor of the two, who was appellant.

The first question is raised by the action of the lower court in overruling the demurrer to the bill as last amended. The second question arises on the proper inferences to be deduced from the evidence. Since the evidence follows the pleading, we think the case can be understood by a statement of the substantial features of the evidence.

Walter E. Trippe left Alabama over fifty years ago and for more than twenty years before he died on December 6, 1934, lived in California, under the assumed name of W. M. Davis. He disappeared, while under bond on a homicide charge. His mother died after he left Alabama, leaving him and his sister, Alva Trippe, as her sole heirs, and through her they inherited real estate, a portion of which is involved in this suit.

E. L. Goodhue and Lusk & Burns, all of Gadsden, for appellee.

Alva Trippe died in 1926 and left a will, which by its terms left all her property (except an $800 legacy in favor of Ollie Trippe) to M. P. Hughes (appellant). Alva Trippe delivered the will to appellant and the following written agreement was executed by them at or about the same time:

"State of Alabama
"Etowah County

"This agreement made and entered into this the 10th day of August, 1924, between Alva P. Trippe, a single woman, party of the first part, and Dr. M. P. Hughes, party of the second part, witnesseth:

"That whereas the party of the first part has this day willed and bequeathed at her death, all her property, both real, personal and mixed, to the party of the second part;

"And whereas party of the first part has a brother, Walter E. Trippe, who left Etowah County, Alabama, several years ago and that she does not know whether the said Walter E. Trippe is living or dead, and being desirous of leaving all of her property to him in the event he is living at the time of her death, and having complete confidence that party of the second party will convey said property of the party of the first part that he may receive, in the event of the death of the party of the first part, under the terms of her said will, to said Walter E. Trippe;

"Therefore, in consideration of the premises, and the payment by party of the first part to party of the second part, the sum of Five Dollars, the receipt whereof is hereby acknowledged by party of the second part, the said party of the second part herein and hereby agrees and binds himself to give and convey by proper deed to the said Walter E. Trippe, in the event he should be alive at the death of said party of the first part, all the property, both real, personal and mixed, received by party of the second party under the will this day made by party of the first part in which she wills and bequeaths to party of the second part all of her property absolutely.

"Witness our hands and seals this the 15th day of August, 1924.

"Alva A. Trippe (L.S.)
"M. P. Hughes (L.S.)"

Upon the death of Alva, appellant wrote to Walter to the effect that Alva had left the property to Walter, even though the will proper left everything to appellant, that appellant was having the will probated and that nothing would be done without instructions from Walter. Appellant took possession of the property, collected the rents and remitted them to Walter, less amounts paid out for taxes and repairs, together with sums received from the sale of stocks. Other letters written to Walter from time to time by appellant and signed by appellant recognized Walter as the owner of the property.

In 1928 appellant made a sale of one parcel of the real estate for $5,000 and remitted the proceeds to Walter. At this time appellant sent a deed for execution by Walter and wife, which deed purported to convey the bulk of the property to appellant had a recited consideration of "$5.00 and other valuable considerations." Appellant's letter transmitting this deed was never located. Walter signed and returned the deed to appellant. The deed was not signed by the wife nor was it either witnessed or acknowledged. The relevant parts of the letter Walter wrote and signed, returning the deed, are as follows:

"Your letter containing blanket deed received * * *

"I wish you were disposing of all my interest back there and I want you to put all my property up for sale at some price; even a sacrifice, and let's close the matter up so I can get what is coming to me and you will be rid of the worry and trouble of looking out for it. Dispose of everything right away and there wont be any controversy or trouble after heirs or assigns on either side.

"I sometimes think of braving everything and come back there and take over what Alva intended I should have, but on the other hand I have implicit confidence in your honesty and integrity and you doing the right thing by me, so why take the risk? But I do want and will ask you to sell everything at once and even at a sacrifice, so you and I can have everything settled between us while we are both living, then there can't be any trouble or law suits for heirs or assigns on either side.

"I am willing and want to protect you and your heirs from any loss, trouble or law suit in case of my death before this estate is settled up, or rather before you are relieved of the trust Alva placed upon you or asked you to fulfill for her and me. So I am signing the deed as per your and

your attorney's request to make you and yours secure.

"Will I be asking too much of you or any more of you than you have of me, when I ask you to have Mr. Lee make out some kind of a document showing I still retain all property left by Alva that might be unsold should you pass away before I do. Your heirs or assigns could record this my deed to you after your death and I would be left penniless and absolutely without anything to show I had any claim whatever. In just a few words wouldn't it be the proper safe guard for me for you to make out a blanket deed to W. M. Davis for all the unsold property, deed to be held by me the same as you are holding my deed, not to be put on record. Just something showing I have what I am supposed to be rightfully entitled to in case of your death.

"But I do want something to protect me in case you should die before all this property is sold. You and Mr. Lee will know best. I am well known and well thought of here as W. M. Davis and can and will sign any deeds you may send and they would make you doubly secure should I die before you and you could place same on record on notice of my death.

"But again, I ask you to close up this affair at your very earliest date and let's get it in shape while both are alive and well, so as to avoid trouble.

"I ask you again, can't you take over the property in some way on your own initiative at a reasonable valuation and secure me W. M. D. by note and mortgage on only the property listed in deed, less the Walnut St. property. Of course that is supposed to be sold already. Or if you can't handle it yourself, can't you lump it off to some real estate or land company for whatever cash payment you can get and note and mortgage on property for balance, say even at 6% interest. This is dragging along and will soon be two years which looks long enough for you to be bothered and me to be unsettled and not knowing just what I can expect or depend upon. * * *

"On reading this over I see I have repeated or said practically the same thing twice but you will understand my meaning and can sum it up in these words. I want to protect you and yours and I ask the same protection from you and yours and I know you will see that I get it. * * *

"* * * But as I mentioned before I have absolute confidence in you and am signing and returning you the deed as asked by you and all the reason am asking for something showing I still have interest there is in case you should die before all is settled. I am sure you will understand my motive."

Appellant then wrote Walter on November 10, 1928, as follows: "The letter with deed received and the deal was closed day before yesterday. * * * You may rest assured 5000 cash which I am enclosing is a very fair price. * * * Mr. Lee says he thinks the enclosed paper should clear up all the trust difficulties."

With this letter appellant sent Walter the following instrument:

"State of Alabama
"Etowah County
"Know all men by these presents, that whereas in Oct. 1928, Walter E. Trippe, alias W. M. Davis, did convey by warranty deed to Dr. M. P. Hughes all the property owned by Alva E. Trippe in her life time, that is situated in Etowah County, Alabama, it being more particularly described in said deed.

"And whereas the purpose of said conveyance was to authorize and empower the said M. P. Hughes, at any time or times, to sell the whole or any part or parts of said real estate, either together or in parcels, and either by public auction or private contract, and upon such terms and subject to such conditions, and in such manner in all respects as he thinks fit, and for the purpose aforesaid to execute such deeds as he shall think fit without being responsible for any loss;

"And whereas the said M. P. Hughes desires that at his death the title to said property described in said deed, known as the Alva F. Trippe property, which remains unsold, shall revert to the said Walter E. Trippe if he be then living;

"Now, therefore, in consideration of the premises and the further consideration of $5.00 in hand paid to M. P. Hughes by Walter E. Trippe, the receipt whereof is hereby acknowledged, the said M. P. Hughes does hereby release, quit claim and convey to said Walter E. Trippe the following property, to-wit: all the property formerly owned by Alva F. Trippe in Etowah County, Alabama, that has not been sold by the said M. P. Hughes prior to his death.

"It being the intent and purpose of this instrument to vest title in the said Walter E. Trippe in all properties sold by the said Walter E. Trippe to said M. P. Hughes, of date Oct. 1928, which has not been sold by the said M. P. Hughes prior to his death.

"To have and to hold to the said Walter E. Trippe, his heirs and assigns, forever.

"Witness my hand this 8th day of Nov. 1928.

"M. P. Hughes"

Until Walter died on December 6, 1934, appellant continued to look after the property and to deal with Walter in regard to it in the same manner as he had done prior to November, 1928. This is shown by letters signed by appellant and written to Walter. These letters recognize a continuation of the trust upon the same basis as existed prior to 1928. Extracts from some of these letters are as follows:

"In one of your letters you said you wanted to sell all your property as soon as possible. * * *" (Letter of February 5, 1929)

"Oscar, Clare & myself are all on the lookout for a sale of any of the fifth int. property, or yours individually. * * *" (Letter of May 19, 1931)

"* * * I have gotten this forty dollars up by working on the renters, all of whom are behind, and I shall try to raise more for you just as soon as I can. * * * As for disposing of property now it will be very difficult because so many people are trying to get rid of it. Of course, if I can sell any of yours I certainly will. Oscar and Clare have been on the lookout for you too—and if we can find sale for any of it you may be sure it will go quick. * * *" (Letter of February 23, 1932)

"Your property list is exactly the same as left by Cousin Alva, except of course the home-place. * * *. Just as present one of your houses is vacant. * * * I am keeping your property in good repair to hold down depreciation and insurance is all paid as it come's due. Everything is ready to turn over to you instantly in case you care to come back at any time and I am doing all in my power to hold it for you and don't think for one minute that I would not be pleased beyond measure to be relieved of the responsibility. So if you can come it would be best for all concerned and you could see the local situation first hand—as your property is all here for you. * * *" (Letter of July 2, 1932)

"Your estate is in a struggle to keep up with taxes. * * *" (Letter of August 27, 1934)

During this period, on December 22, 1932, appellant got Walter to send some money to pay taxes on the property.

On his death, Walter left a will, dated May 9, 1931, which was unattested and never probated. The will contains the following:

"I give to Annie V. Davis wife one half of any equity in the property held in trust for my benefit by M. P. Hughes in the State of Ala.

"I give to M. P. Hughes cousin the remaining one half of the equity referred to in the foregoing paragraph."

Appellant promptly was advised of the death of Walter by Walter's doctor. He received letters from the complainant and a banker and a lawyer, advising him of the contents of this will and asking for information about the trust estate. He made no reply to these inquiries and stopped remitting for rents.

On July 20, 1940, on demand made for the property and for accounting by attorneys representing appellee, the appellant declined to recognize any claim thereto except his own. The letters indicate that in 1940 the property was assessed in the name of M. P. Hughes, executor of the estate of Alva F. Trippe.

Walter E. Trippe, prior to leaving Alabama, married one Ollie E. Trippe, who is still living. There is no proof that these parties were divorced. Walter Trippe procured a license and married complainant in California in 1915 and they resided there as husband and wife until his death in 1934. Prior to the institution of this suit, Ollie E. Trippe conveyed to complainant for a recited consideration of $500 all right or interest which she might have to the real estate here involved and any right or claim which she might have against appellant for rents.

Walter E. Trippe left surviving no ancestors, no lineal descendants and no living brother or sister or descendant of any brother or sister.

There were two phases of the case, each of which, according to the allegations of the bill as last amended, formed a basis for the creation of the trust. One phase

was the agreement signed by Alva F. Trippe and also signed by M. P. Hughes (appellant) dated August 15, 1924. The other phase was in substance that after the probate of the will of Alva Trippe, deceased, appellant wrote many letters, signed by appellant, in which the trust was recognized.

Appellant insists that the lower court was in error in overruling the demurrer which was directed to each separate phase of the bill as last amended. The demurrer raises the question of the effect of the following statute: "Trust in lands; how created; exceptions.—No trust concerning lands, except such as results by implication or construction of law, or which may be transferred or extinguished by operation of law, can be created, unless by instrument in writing, signed by the party creating or declaring the same, or his agent or attorney lawfully authorized thereto in writing." § 149, Tit. 47, Code of Alabama 1940.

There is nothing in the will referring to the agreement between Alva Trippe and appellant dated August 15, 1924. The will provides for an absolute devise to appellant and there is no ambiguity in the will. On the other hand, the agreement does not conform to testamentary requirements. We quote now from appellant's brief: "In the case of Dozier v. Dozier, 201 Ala. 174, 77 So. 700, one of the leading cases, it was held that a letter relating to the will there involved was not admissible for the purpose of establishing a parol trust, the letter not being testamentary in its character. The letter was signed by the person alleged to have created or declared the trust, but it was not referred to in any manner in the will in question there. Dozier v. Dozier has been cited by this Court in Rice v. Park, 223 Ala. 317 [135 So. 472] and in Money v. Money, 235 Ala. 15 [176 So. 817], in both of which it is held, in effect, that there must be some latent ambiguity needing explanation or some specific tie between the writings and the will or deed, as the case may be. * * * Did Alva create or declare a trust of said property in and by that instrument? The will did not refer to it, nor did it refer to the will. (See Dozier v. Dozier, supra.)"

■ We think, however, that there is a misapprehension as to the function and purpose of the instrument dated August 15, 1924. The instrument does not seek to interpret the will of Alva Trippe. It is, therefore, not in conflict with the principles declared in Dozier v. Dozier, supra. The instrument is an agreement designed to take effect after the absolute devise to appellant under the will becomes effective. It provides for an express trust and being signed not only by Alva Trippe, but also by appellant, fully complies with the statute. Executory contracts similar in principle have been upheld by this Court. Wagar v. Marshburn, 241 Ala. 73, 1 So.2d 303.

■ On the alternate phase of the bill as last amended, the trust is based on the letters signed by appellant. It is insisted, however, that these signed letters do not suffice, since they were signed by appellant and not by Alva Trippe. This insistence is not tenable. The letters recognizing the trust were signed by the trustee after he received the legal estate. This complies with the requirements of the statute. Wiggs v. Winn, 127 Ala. 621, 626, 29 So. 96; Hodge v. Joy, 207 Ala. 198, 92 So. 171; see also Scott on Trusts, vol. 1, § 42.3, p. 240.

The lower court was not in error in overruling the demurrer to the bill as last amended.

■ Finally, appellant insists that even if a trust was created, it was so modified by the documents and letters passing between the beneficiary, Walter Trippe, and the trustee, appellant, as to vest title to the trust property in appellant at the time of the death of Walter Trippe. We have carefully considered the evidence and, like the lower court, cannot acquiesce in this conclusion. The evidence speaks for itself and there is no need to debate it in detail. We conclude that at the death of Walter Trippe his right and beneficial interest in the trust property passed to his heirs. Under the evidence his sole heir is his widow. There is no need to determine whether Ollie Trippe or appellee is the widow, as Ollie Trippe has conveyed all her title and rights to appellee.

We do not think that the other features of the decree of the lower court should be disturbed, the decree being in all respects approved and affirmed.

Affirmed.

GARDNER, C. J., and BOULDIN and FOSTER, JJ., concur.