25 So.2d 423

## OWENS et al. v. LACKEY.

### 8 Div. 335.

Supreme Court of Alabama.

March 28, 1946.

538

Claud D. Scruggs, of Guntersville, and Scott & Dawson, of Fort Payne, for appellants.

Marion F. Lusk, of Guntersville, for appellee.

STAKELY, Justice.

This is a suit in equity seeking reformation of a deed on the basis of mutual mistake. The bill was filed by Kate Lackey (appellee), the widow of Jesse A. Minnix, deceased, who has remarried. The bill was filed against Laura Mae Owens, individually and as administratrix of the estate of Jesse A. Minnix, deceased, her husband Ulysses Owens, and their two minor children Junior Owens and Laverne Owens. Laura Mae Owens is the adopted daughter of Jesse A. Minnix, deceased. Laura Mae Owens, individually and as administratrix of the estate of Jesse A. Minnix, deceased, and her husband Ulysses Owens (appellants), separately demurred to the bill of complaint. The court overruled the demurrer. Hence this appeal.

In addition to showing the relationships set forth above, the case, in substance, made by the bill is as follows: After the adoption of Laura Mae Owens on April 17, 1920, when she was eight years of age, Jesse A. Minnix and complainant, his wife, cared for and supported the child and undertook to educate her. Complainant, although not an adopting parent, treated the child with the care and affection of a natural parent. By her earnings as a school teacher and with other resources, she shared with her husband the expense of providing for the child and aided her husband in the purchase in his name of the "Hurt Farm" of 80 acres for $2,500 in 1922, and the "Crossville Farm" of 63½ acres for $1,200 in 1925. In 1927, against the advice and wishes of complainant and her husband Jesse Minnix, Laura Mae, at the age of fifteen years, left home and married Ulysses Owens. In 1927 after the marriage, the "Minnixes offered the Owens" free use of a forty acre farm near their home and made improvements thereon. The Owens moved on the farm but refused to stay there when Jesse Minnix declined to give them a deed to it. In 1939 the Minnixes having moved to their farm near Crossville and because of the need of the Owens, induced the Owens to occupy and use, rent free, the old homestead of thirty-seven acres. The bill alleges that on July 23, 1940, " * * * said Minnixes made the following agreement with said Laura Mae Owens: That they would convey to her for her life, with remainder in fee to her Two sons, said 37 acre farm, worth over $4000 and she would relinquish and

not claim any part of said Jesse A. Minnix's estate so long as either of the Minnixes lived, and that said Kate Minnix if she should survive said Jesse A. Minnix, was to have all other property real and personal which might be left by said Jesse A. Minnix, with remainder to said Laura Mae Owens of all such property on hand at complainant's death. That a deed was executed and delivered on that date to said Laura Mae Owens in pursuance of said agreement but by mutual mistake such agreement was not fully set forth in said deed, a copy of which is hereto attached marked 'Exhibit A.' " (Copy of the deed Marked Exhibit "A" will appear in the report of the case.)

Under the aforesaid agreement, the Owens took possession of the thirty-seven acre farm and lived thereon until 1942. It is alleged that the agreement was tripartite and the consideration furnished by the complainant was in part the years of labor and service performed by her in caring for Laura Mae Owens when she was under no legal obligation to do so, but principally, it was complainant's release of her dower and homestead rights in the aforesaid thirty-seven acre farm; that the consideration furnished by Jesse A. Minnix was the conveyance to the respondents of the thirty-seven acre farm, and the consideration furnished by Laura Mae Owens was her release of her expectancy in the estate of Jesse A. Minnix and her promise not to claim thereafter any part thereof, except such part as might be left undisposed of by complainant at her death; that the agreement was not only made with the full knowledge and consent of Jesse A. Minnix but was planned by him; that all the obligations resting on Jesse A. Minnix and complainant by said agreement were fully discharged and executed and part of the obligations resting on Laura Mae Owens have been discharged and executed, as shown hereinabove; that by the agreement Laura Mae Owens became a fiduciary, bound to hold the title to any property inherited by her from said Jesse A. Minnix in trust for complainant.

Jesse A. Minnix died intestate on March 2, 1944, leaving an estate consisting of a 63½ acre homestead farm at Crossville worth about $4,000, an 83 acre farm adjoining the aforementioned "Mt. Tabor Farm" near Dawson worth about $4,000, an automobile worth $1,100, a note worth $500, three cows worth $139, and also household and kitchen furniture, clothing, groceries and farm tools, all in DeKalb County. He left no debts.

Under the aforesaid agreement complainant retained possession of the homestead and chattels and took possession of the 83 acre farm. She sold the automobile and cows and collected the note. She sold the 83 acre farm for $4,000. The Owens joined in the deed. Out of the proceeds complainant gave Laura Mae $1,000. It is alleged that "Laura Mae Owens fully understood and acquiesced in all of complainant's actions and recognized them as being in accord with said agreement of July, 1940."

In October, 1944, complainant moved to Marshall County and there purchased a little home in which for two months she gave the Owens boys room and board without expecting any pay therefor. On January 21, 1945, when the Owens learned of complainant's engagement to marry Mr. Lackey, they became critical and hostile toward complainant, and thereupon Laura Mae Owens repudiated the aforesaid agreement and the rights of complainant under the agreement. According to the bill, she has improvidently obtained letters of administration on the estate of Jesse A. Minnix, deceased, for the purpose of interrupting and interfering with complainant's use and enjoyment of the personalty left by the decedent, and Ulysses Owens is aiding and abetting her in such conduct.

The prayer of the bill is for a construction and enforcement of the aforesaid agreement; that complainant be declared to be the owner of all the property left by Jesse A. Minnix as of the date of his death, subject to the right of Laura Mae Owens to inherit so much of same as may be undisposed of at complainant's death, and that the aforesaid deed be reformed so as to include the said agreement, and that complainant's title be quieted and that Laura Mae Owens be required to quit claim any right of possession or dominion over said property, and be required to perform specifically her obligations under the agreement. The prayer is also for general relief.

It is apparent that the alleged agreement does not conform to testamentary requirements. Hence it is argued that there is no basis for reformation, since a

542

court will not grant reformation in order to establish what amounts to an invalid devise. We think, however, that there is a misapprehension about the matter. There is no effort to make a will for Jesse Minnix, deceased. Rather, the purpose is to establish an agreement to become effective upon his death as to the property he then owned. This court has upheld similar agreements. The effect is to create a trust on his estate enforceable against his heirs, and to enforce the trust specific performance is available. Cowin v. Salmon, 244 Ala. 285, 13 So.2d 190; Hughes v. Davis, 244 Ala. 680, 15 So.2d 567; Wagar v. Marshburn, 241 Ala. 73, 1 So.2d 303. Taking the bill from this broad viewpoint, the bill has equity.

But even so, other objections to the bill are urged, which we shall proceed to discuss. (1). It is claimed that the agreement is violative of the statute of frauds and for this reason, reformation will be denied. But if reformation is granted and the alleged agreement is written into the deed, the contract as reformed will be in writing. Hence the statute of frauds is no obstacle. Thompson v. Marshall, 36 Ala. 504, 76 Am.Dec. 328; 45 Am.Jur. § 17, p. 592. Nor can it be contended, as being violative of the statute of frauds, that Laura Mae Owens did not sign the agreement contained in the deed which she received. "Appellee insists that the covenant of this clause was not binding upon the grantee, nor upon appellee, because the deed was not subscribed by the grantee. But the doctrine is well settled in this state that an interest in lands, which the court of chancery will protect, may be acquired by estoppel notwithstanding the statute of frauds." Weil v. Hill, 193 Ala. 407, 413, 69 So. 438, 440.

And it may be added that the court in order to reform the instrument may supply omitted provisions. 45 Am.Jur. § 34, p. 601.

(2). It is true, as contended by appellant, that the deed as now constituted conveys the fee simple title to the property therein described to Laura Mae Owens. Prudential Ins. Co. of America v. Karr, 241 Ala. 525, 3 So.2d 409. But this is no reason for disallowing reformation so as to show a conveyance to Laura Mae Owens for life with remainder to her two sons. The purpose of reformation is to effectuate the true intention and agreement of the parties.

(3). Ulysses Owens was not a party to the instrument and the agreement cannot now be reformed to make him a party. 53 C.J. p. 957. And a married woman cannot make a contract to convey her real property without the assent and concurrence of her husband manifested by his joining in the alienation in the mode prescribed by law for the execution of conveyances of land. Section 73, Title 34, Code 1940. However, these principles are not here applicable. Since it would be unconscionable for a married woman to get the land of another free of the lien for the purchase price which she agreed to pay (Crampton v. Prince, 83 Ala. 246, 3 So. 519, 3 Am.St.Rep. 718; Joseph v. Decatur Land, Improvement & Furnace Co., 102 Ala. 346, 14 So. 739, it would be equally wrong for Laura Mae Owens, a married woman, to inherit the estate of Jesse Minnix, deceased, free from the conditions imposed thereon by the deed which she received, and which constituted the consideration for the conveyance to her. Lewis v. Montgomery Bldg. & Loan Ass'n, 70 Ala. 276, 284. Ulysses Owens, however, was a proper party to the suit because the bill alleges that he was aiding and abetting his wife in her interference with complainant's use and enjoyment of the personalty.

(4). Citing Miller v. Morris, 123 Ala. 164, 27 So. 401, it is claimed that complainant has no right of reformation because her only interest in joining in the conveyance of her husband was to convey her dower and homestead rights. In this connection, it is also contended that, the deed being voluntary, is not subject to reformation. Christian Church at Pilgrim's Rest v. Littleville Camp, No. 258, W. of W., 185 Ala. 80, 64 So. 9. According to the allegations of the bill, however, the deed was not a voluntary conveyance and the purpose of complainant in joining in the deed was more than merely to convey inchoate interests in the property. By joining in the deed, she received a release of such rights as Laura Mae Owens might have as heir in the estate of her adopting parent.

We conclude that the court acted correctly in overruling the demurrer.

Affirmed.

GARDNER, C. J., and FOSTER and LAWSON, JJ., concur.