316 So.2d 336

**Dorothy DaPonte TRABITS and Arthur Trabits**

v.

**L. Lamar SNOW.**

**SC 811.**

Supreme Court of Alabama.

July 17, 1975.

**314**

Howell, Johnston, Langford, Finkbohner & Lawler, Mobile, for appellants.

Ray G. Riley, Jr., Mobile, for appellee.

HEFLIN, Chief Justice.

The plaintiff, Dr. L. Lamar Snow, brought an action for specific performance of a contract to sell land. The Mobile Circuit Court ordered specific performance and the defendants, Mrs. Dorothy DaPonte Trabits and her husband Mr. Arthur Trabits, appeal. The judgment is reversed.

In May 1973 the plaintiff learned that Mrs. Trabits might be willing to sell some of her property on the Dog River. He discussed with her this possibility, and after several days they arrived at an agreement to buy and sell a portion of her land.

At the time of the agreement, neither party knew exactly how wide Mrs. Trabits' property was, but they negotiated upon her estimate that it was five hundred and fifty (550) feet wide. One portion of this present appeal involves a dispute over how much land Dr. Snow was to receive. A later survey showed the tract to be 576.53

feet wide. Dr. Snow contends that the wording of the agreement shows he was to receive all but 150 feet, so that he would be entitled to 426.53 feet. Mrs. Trabits, on the other hand, says the agreement was that Dr. Snow was to receive at the most 400 feet, and that much only if it left her at least 150 feet.

Dr. Snow brought suit on the written agreement and the trial court granted his demand for specific performance. Because the contract does not meet the requirements of Title 34, Section 73, Alabama Code of 1940, as amended (Recompiled 1958), Dr. Snow is not entitled to specific performance.

It is undisputed that Mrs. Trabits owns the land entirely in her own right and that her husband holds no interest in the land.

Title 34, Section 73, Alabama Code of 1940, as amended (Recompiled 1958), provides:

"Power of wife to alienate or mortgage her real property.—The wife, if the husband be of sound mind, and has not abandoned her, or be not a nonresident of the state, or be not imprisoned under a conviction for crime for a period of two years or more, cannot alienate or mortgage her lands, or any interest therein, without the assent and concurrence of the husband, the assent and concurrence of the husband to be manifested by his joining in the alienation in the mode prescribed by law for the execution of conveyances of land. But if the husband be non compos mentis, or has abandoned the wife, or is a nonresident of the state, or is imprisoned under a conviction for crime for a period of two years or more, the wife may alienate or mortgage her lands as if she were sole. Provided, however, that the wife may lease her lands and tenements or any interest therein without the assent and concurrence of the husband."

It is not disputed that as of the time of trial the husband was of sound mind, had not abandoned Mrs. Trabits, was a resident of this state, and was not imprisoned.

This court has long held that while this statute specifically requires the husband's consent for the wife to "alienate or mortgage her lands," this requirement must also be met in order for the wife to make a binding contract to sell her land. In *Thompson v. Odom*, 279 Ala. 211, 184 So. 2d 120 (1966), this court stated:

"Under our statute (§ 73, Title 34, Code 1940) a married woman, living with her husband, the husband being of sound mind and a resident of this state, is without power to alienate her land, or any interest therein, without the assent and concurrence of the husband, expressed in writing, and contracts for the sale of her lands made by her without the assent and concurrence of her husband in the manner required by that statute, are void. * * *"

See also, *Stickney v. Haas*, 253 Ala. 238, 44 So.2d 4 (1950); *Owens v. Lackey*, 247 Ala. 537, 25 So.2d 423 (1946); *Cooper v. Pearce*, 222 Ala. 540, 133 So. 538 (1931); and *Obermark v. Clark*, 216 Ala. 564, 114 So. 135 (1927).

It was therefore necessary, in order for this contract to be specifically enforced, that Arthur Trabits sign the contract to show his assent and concurrence. To support the trial court's decree of specific performance, then, that court must have found that Arthur Trabits signed to show his assent and concurrence.

■■ This court is aware of the principle that where the trial court has made no specific findings of fact this court "will assume that the trial court made those findings which will justify the decree rendered." *Sims v. Reinert*, 285 Ala. 658, 235 So.2d 802 (1970); *Dockery v. Hamner*, 281 Ala. 343, 202 So.2d 550 (1967). However, this court must apply another principle which is equally applicable: "Where testimony is taken ore tenus, the findings

of facts made and entered by the trial court will be sustained unless they are clearly and palpably wrong *or without supporting evidence,* or are manifestly unjust." (Emphasis added.) *Sterling Oil of Oklahoma, Inc. v. Pack,* 291 Ala. 727, 287 So.2d 847 (1973). See also *Renfroe v. Weaver,* 285 Ala. 1, 228 So.2d 764 (1969); *Dunn v. Fletcher,* 266 Ala. 273, 96 So.2d 257 (1957).

■ The evidence reveals that Arthur Trabits claimed no interest in his wife's land, that his wife had instructed him to stay out of her business, and that, while he was present during some of the negotiations, he did not participate in them other than at one point to help the plaintiff measure a portion of the land. The contract form that was used contained two lines for buyers' signatures on the right side of the one page form near the bottom, and one line on the opposite side (left side) of the form under the word "WITNESS:". On the witness line was signed the name "Mrs. Ann K. Nicholas." It was not contended that Mrs. Nicholas was a party to the sale, and the evidence showed that she signed only to witness Dr. Snow's signature. The form also contained two lines for sellers' signatures on the right side of the form near the bottom. On the first line was signed "Dorothy DaPonte Trabits." The name "Arthur Trabits" was not signed on the second line under Mrs. Trabits, but on the opposite side (left side) of the form on another line under the word "WITNESS:". There is nothing on the form itself to indicate that Arthur Trabits signed for any purpose other than to witness his wife's signature.

Arthur Trabits testified he signed as a witness. A review of the trial transcript shows no evidence on which to base a finding that Arthur Trabits intended to sign as anything other than a witness.

While arguing that the trial court made a finding of fact that Arthur Trabits signed to show his assent and concurrence, the plaintiff apparently does so on the assumption that a signature given as a witness amounts to a signature given to show assent and concurrence. The plaintiff contends that one of the issues presented to the trial court was the following:

"As a matter of law, is a contract to sell real property owned by a wife in fee title in which the name of the husband does not appear in the body of the instrument and * * * which the husband does not sign as a contracting party, but * * * does sign at the foot of the contract as a witness to his wife's signature, sufficient to meet the mandate that a married woman must have the assent or concurrence of the husband expressed in writing to create a binding agreement"

The plaintiff, therefore, acknowledges that Arthur Trabits signed as a witness, but he cites four cases from this court for the proposition that a husband's signature as a witness to his wife's signature is sufficient to meet the requirements of Title 34, Section 73, Alabama Code of 1940, as amended (Recompiled 1958).

Plaintiff first cites the case of *Rushton v. Davis,* 127 Ala. 279, 28 So. 476 (1900). In that case this court stated:

"* * * [T]he name of Peterson is simply signed under the name of his wife and acknowledged by him as one of the grantors in the conveyance, no writing appearing upon it signed by him, expressing his assent or concurrence to her executing it. But this is a matter of no consequence. The mere signing by Peterson of the deed was sufficient compliance * * *. The signing of the deed by Peterson, the husband, was an expression by him of his assent in writing in order to make it a valid contract to convey the lands to the Davises."

The term "the mere signing by Peterson" as used in *Rushton v. Davis* was not intended to include the signing of his name anywhere on the deed for any purpose. It

had clear reference to the preceding paragraph of the opinion, which cited the case of *Murphy v. Green*, 120 Ala. 112, 22 So. 112 (1897), where the husband had signed his name to a deed below this statement: "This is to certify that the above grantor is my wife and that she has my unqualified permission to make above grant and sale of the above named lands. This 15th day of July, 1892." The term "the mere signing by Peterson" was used only to indicate that the signing was sufficient even if done without the statement that was present in the *Murphy* case. Thus, *Rushton v. Davis* did not involve a husband who signed only as a witness, but a husband who had signed "as one of the grantors in the conveyance."

Plaintiff next cites *Wood v. Lett*, 195 Ala. 601, 71 So. 177 (1916), wherein this court considered an alleged contract made between two married women for the sale and purchase of realty. The husbands signed at the bottom, but their names did not appear in the body of the instrument. This court stated that "the *only purpose of their signatures* [*was*] *to witness their assent to and concurrence in the agreement* on the part of their respective wives, for which purpose their mere signatures would have been sufficient, had the wife been otherwise bound.—*Rushton v. Davis* * * *.*" (Emphasis added.) Again, since the "only purpose" of the husband's signing was "to witness their assent and concurrence," the case does not stand for the proposition that a husband's signature given for the purpose of *witnessing his wife's signature* is sufficient to meet the statutory requirement.

The plaintiff then cites *Irwin v. Shoemaker*, 205 Ala. 13, 88 So. 129 (1920). The effect of a husband's signature given only as a witness to his wife's signature was not at all an issue presented in that case.

The appellee also cites *Bowden v. Turner*, 243 Ala. 182, 8 So.2d 849 (1942). But neither did that case involve a husband who signed only as a witness. Rather, it appears that the instrument in question in that case, a deed, was signed by the wife, whose signature (mark) was witnessed by two witnesses; it was also signed by her husband, whose signature (mark) was given to show his "assent and concurrence * * * in writing." The husband's signature was in turn witnessed, but by only one witness. This court held that while it was invalid as a conveyance, the deed was valid as a contract to convey.

It is clear that in none of these cases cited by the plaintiff did the husband sign merely as a witness to his wife's signature. In each case either the husband signed as a party to the transaction or there was other evidence showing that he signed to show his assent and concurrence.

Neither party has questioned the applicability of Title 34, Section 73, to this situation; rather, all parties concede its applicability. This court has said that this statute is a recognition of the husband's "duty to shield the wife against oppressive dispositions of her property." *Smith v. Smith*, 245 Ala. 420, 17 So.2d 400 (1944).

No one has challenged the constitutionality of this statute, so this court does not reach that question. *City of Mobile v. Gulf Development Company*, 277 Ala. 431, 171 So.2d 247 (1965); *Alabama Warehousing Company v. State*, 227 Ala. 258, 149 So. 843 (1933); *Faircloth-Segrest Mercantile Company v. Roach*, 211 Ala. 498, 100 So. 908 (1924).

Because the statutory requirement has not been met, specific performance should not have been decreed. The judgment must be reversed.

Reversed and remanded.

MERRILL, MADDOX, JONES and SHORES, JJ., concur.

JONES, Justice (concurring specially):

I agree completely with the opinion, but I would add this: Assuming a validly executed contract by the Trabits, the maximum frontage that Dr. Snow is entitled to under the contract is 400 feet. The 150 feet reference is at most a mutual mistake. The 400 feet reference is definite and certain and constitutes all the property contracted to be sold.