164 So. 296
### CITY OF MARION v. UNDERWOOD.
2 Div. 64.

Supreme Court of Alabama.
Nov. 21, 1935.

226

Pitts & Pitts, of Selma, and A. W. Stewart, of Marion, for appellee.

Clifton C. Johnston, of Marion, for appellant.

**GARDNER, Justice.**

Complainant is the owner of certain improvement bonds issued by the city of Marion, and filed this bill for a foreclosure of the lien upon the improved property. The city of Marion, with others, interposed demurrers to the bill, which were overruled, and said city alone prosecutes this appeal.

The bill discloses there were several improvement ordinances passed by the municipality which desired to issue bonds for adequate financing, and exercised its power to group these improvements and make one issue of bonds, as expressly provided by section 44, Gen.Acts 1927, pp. 534, 545, and the bonds owned by complainant are of that issue. The various property owners are made defendants to the bill, and the ordinances and proceedings as to each street improvement are made exhibits thereto.

That these proceedings disclose a compliance with the statute as to each such improvement is not here questioned.

■ It is argued that the bill is defective as multifarious. Viewed from a practical standpoint, however, there appears no obstacle in the procedure here pursued. As often observed, no universal rule in regard to multifariousness is admitted to be established as to cover all possible cases. The objection is largely a matter of discretion, and every case must, in a measure, be governed by what is convenient and equitable under its own peculiar facts, subject to the recognized principles of equity jurisprudence. It is, therefore, always proper to exercise this discretion in such a manner as to discourage future litigation and prevent multiplicity of suits, and never so as to do plain violence to the maxim that "courts of equity 'delight to do justice, and not by halves.'" O'Neal v. Cooper, 191 Ala. 182, 67 So. 689, 691.

■ The above noted act of 1927 clearly contemplated just such a procedure as complainant has followed. In section 44 a grouping of the improvement ordinances was authorized, so that one bond issue may be had. And in section 42 (Gen.Acts 1927, p. 544) it is stated that the lien and assessment are transferred to the bondholders, and shall stand as security for the bonds, which shall be enforceable for collection by foreclosure in any court of competent jurisdiction. It is further provided: "The first bond or coupon holder who institutes a foreclosure suit in any court against any property assessed, shall only be entitled to have the proceeds of said suit applied pro rata to the payment of his own bonds and the bonds held by others so that not more than one foreclosure suit shall be brought against any one lot or parcel of land. The costs of such foreclosure suit, including a reasonable attorney's fee, where the first bond or coupon holder is represented by an attorney in the foreclosure suit, shall be ascertained by the court and deducted from the proceeds of said suit before it is pro rated, as herein provided."

The bill discloses that as to each defendant there has been default, and that the entire assessment as to such defendant is therefore due, as is provided in section 45, Gen.Acts 1927, pp. 753, 769.

Clearly, it was not contemplated that the bondholder should enforce his lien against each property owner separately, and the mere fact there were separate improvement ordinances presents no valid objection to such a procedure as here followed, especially in view of the fact that the statute expressly authorized a grouping of such ordinances to the end there might be a single bond issue. It appears, therefore, that complainant has pursued the statute (Gen. Acts 1927, p. 534), which clearly contemplated but a single proceeding against all, and we can see no reason for the court to decline to accept and follow the policy so plainly indicated by the lawmaking body. The objection of multifariousness is not well taken.

■■ But defendant insists that the act of 1927 (Gen.Acts 1927, p. 534) is uncon-

stitutional as violative of section 45 of the Constitution. The purpose of this 'constitutional provision to prevent the passage of laws under deceptive or misleading titles has often been stated, and that its requirements are not to be exactingly enforced, *nor in such manner as to cripple litigation.* The title may be very general, and need not specify every clause in the statute. It is sufficient if they are all referable and cognate to the subject expressed. "And when the subject is expressed in general terms, every thing which is necessary to make a complete enactment in regard to it, or which results as a complement of the thought contained in the general expression, is included in, and authorized by it." Gibson v. State, 214 Ala. 38, 106 So. 231, 236.

We are persuaded the statute comes within these requirements. The bonds are, of course, supposed to be paid at maturity, either voluntarily or by compulsion. The title specifies not only their issuance, but their payment and regulation also. It states as its purpose "to provide a code of laws" upon the subject therein stated, which itself indicates "a revision such as to harmonize conflicts, supply omissions, and generally clarify and make complete the body of laws," relating thereto. Gibson v. State, supra.

True, the mere statement that it is to provide a code of laws does not serve to bring the act within the exception of section 45 of the Constitution, as was held in the Gibson Case, supra. Nevertheless, being in the title and properly so, it must needs be given some meaning, and given its true meaning it indicates a rather general revision of the laws touching the subject-matter of the title. Clearly, therefore, we think a provision for the proper procedure to enforce the collection of such bonds is referable and cognate to the subject expressed.

The improvement statute (Gen.Acts 1927, p. 753) contemplated the issuance of such bonds, and that they should be secured by the assessments (sections 52 and 53 [pages 771, 772]), and that the bonds so issued should be subject to the provisions of existing laws relating to the issuance of municipal bonds (section 54). It is no answer to assert, therefore, that the foreclosure under the statute here invoked is not of the bonds, but of the assessment liens only, as it is but the enforcement of the payment of the bonds by the fore-

closure of the lien given for their security; and section 42 of the Gen.Acts 1927, pp. 534, 544, therefore very properly makes reference to the foreclosure of the bonds.

The case of State ex rel. v. Miller, 158 Ala. 59, 48 So. 496, stressed by defendant, is readily distinguishable, and in no manner conflicts with this view. We, therefore, consider the act valid. Gibson v. State, supra; Blackwell v. State, 230 Ala. 139, 162 So. 310.

The statute expressly provides that a single bondholder may institute the foreclosure proceedings. It does require, however, that the money collected be prorated among the other bondholders after deduction of cost. There was no necessity, therefore, that other bondholders be made parties. The bill expressly recognizes the right of the other bondholders, and is filed also in their behalf, and seeks to have all bondholders, within a time to be fixed by the court, to file their bonds with the register with proper proof. The statute authorizing this method of procedure is in harmony with chancery rule 19, and will work no injustice in its operation.

The bill, in accordance with the statute, seeks to have the proceeds acquired under the foreclosure proceedings applied pro rata to the payment of complainant's bonds and those of other bondholders, and there is nothing in the statute suggesting that the bonds due in certain years are only payable out of assessment installments for those years, and, indeed, the language hereinabove quoted clearly indicates to the contrary.

It was the duty of the city of Marion, as a statutory trustee (City of Mobile v. Smith, 223 Ala. 480, 136 So. 851), to collect for the bondholders the installment assessments as they became due. Sections 45 46, and 47, Gen.Acts 1927, pp. 534, 545–547.

The statute makes no demand on the city as a condition precedent to the institution of such a suit, and, in the absence of such a provision in the statute, no such demand is necessary. 44 Corpus Juris § 3468.

As such statutory trustee, we further think the city of Marion was a proper party to the bill to be made to pay over by mandatory order any assessment payments heretofore received and in its possession, if any there be.

There appears to be no ground of demurrer challenging the right of complainant to have any property owned by the city sold in the enforcement of the lien. We enter into no discussion, therefore, of that question, but consider it proper to cite, in passing, the cases of City of Huntsville v. Madison County, 166 Ala. 389, 52 So. 326, 139 Am.St.Rep. 45, and State v. City of Montgomery, 228 Ala. 93, 151 So. 856.

We may add, however, that in no event would any principle involved in these latter authorities be applicable to property acquired by the city subsequent to the fixation of the lien of the statute, as appears to have been the case concerning some of the property now alleged to be owned by the city of Marion, but, as to such property, the city stands in the stead of the original owner, its vendor. As such owner, the city was, of course, a proper party to the bill, and to be dealt with as any other defendant owner in default.

The defendants are shown to be in default with their entire assessment now due, and complainant's bonds are past due and unpaid. All other bondholders in like condition are to share pro rata in the proceeds. In all of this complainant has but followed the statute, and we are of the opinion the bill was not subject to any assignments of demurrer interposed thereto.

Let the decree stand affirmed.

Affirmed.

BOULDIN, BROWN, and FOSTER, JJ., concur.