202 So.2d 550

Tom DOCKERY et al.

v.

Alvin Trimm HAMNER et al.

6 Div. 382.

Supreme Court of Alabama.

Sept. 14, 1967.

Gordon Davis, Tuscaloosa, for appellees.

Robt. B. Harwood, Jr., of Clement, Rosen, Hubbard & Waldrop, Tuscaloosa, for appellants.

COLEMAN, Justice.

Complainants appeal from decree denying relief in suit to cancel a deed.

The ten complainants are children and grandchildren of Mrs. Dockery, deceased. Respondents are Lucille Dockery Hamner, sometimes referred to as Mrs. Hamner, and her husband, Alvin Trimm Hamner. Mrs. Hamner is a daughter of Mrs. Dockery. The ten complainants and Mrs. Hamner, together, comprise and constitute all the next of kin and heirs at law of Mrs. Dockery, who left a will devising all her real estate to complainants and Mrs. Hamner.

On June 19, 1957, Mrs. Dockery, for a recited consideration of $1,000.00, conveyed three and three-tenths acres of land to respondents by warranty deed. Mrs. Dockery signed by her (X) mark. The signature is attested by two witnesses. A notary public certified in code form that Mrs. Dockery acknowledged voluntary execution of the deed on the day it bears date. The deed was filed for record in the office of the Judge of Probate at 10 a. m. on the day of its date. Mrs. Dockery died October 24, 1961.

Complainants pray for cancellation on three grounds, severally, to wit: lack of consideration, undue influence, or mental incapacity.

On the trial, complainants offered the oral testimony of one witness, Mrs. Dovie Lollar, a complainant. Respondents called no witness. The cause was submitted on bill, answer, and Mrs. Lollar's testimony. The court denied relief and dismissed the bill of complaint.

Complainants assert that the court erred in denying relief because, under the evidence, they are entitled to have the deed cancelled on the ground that its execution was obtained by Mrs. Hamner's exercise of undue influence over her mother, Mrs. Dockery.

Complainants say: that once the parties attacking the deed have shown that a child is dominant in her relations to her parent, the burden of proof is shifted to the child to go forward with evidence and prove satisfactorily that the transaction was fair and equitable in every respect; that complainants did show that Mrs. Hamner was the dominant spirit; that respondents failed to exonerate themselves; and, therefore, complainants are entitled to cancellation of the deed and the court erred in denying relief.

We repeat the statement of certain applicable principles. The relationship of parent and child is confidential. It is presumed, prima facie, that, in all transactions between parent and child, the parent is the dominant party. The mere fact of a donation from parent to child does not itself raise a presumption of undue influence, but, on the contrary, the presumption is that such a transaction is free from undue influence. Dillard v. Hovater, 254 Ala. 616, 618, 619, 49 So.2d 151.

Such presumption is not conclusive, and where it is made to appear by the proof that the child, and not the parent, is the dominant spirit, then the burden of proof is shifted to the former to establish the fairness of the transaction and that it was not the result of undue influence. Tipton v. Tipton, 249 Ala. 537, 32 So.2d 32.

The burden of proof is, however, upon those seeking to invalidate such a transaction to reasonably satisfy the court that time and circumstances have reversed the order of nature so that the dominion of the parent has not merely ceased, but has been displaced by subservience to the child. Dillard v. Hovater, supra.

Complainants seek to invoke the doctrine that, in transactions *inter vivos* where the parties stand in confidential relations, and the grantee, who is the beneficiary, is the dominant spirit in the transaction, the law raises up the presumption of undue influence and casts upon the grantee the burden of repelling such presumption by satisfactory evidence whenever the transaction is assailed. McLeod v. McLeod, 145 Ala. 269, 272, 40 So. 414.

It was established that the grantor, Mrs. Dockery, and the grantee, Mrs. Hamner, were parent and child. Grantor and grantee, therefore, bore a confidential relationship to each other. Dillard v. Hovater, supra. The prima facie presumption, however, is that the parent, the grantor, was the dominant party. Idem.

In order to raise the presumption that the transaction was the result of undue influence exercised by the grantee over the grantor the party seeking to invalidate the deed, the complainants in the instant case, must show clearly and satisfactorily by the evidence that the order of nature had been reversed and that the grantee, Mrs. Hamner, was the dominant spirit. Who was the dominant spirit in such cases becomes a question of importance in the application of the burden of proof. Webb v. Webb, 250 Ala. 194, 204, 33 So.2d 909; Wooddy v. Matthews, 194 Ala. 390, 396, 60 So. 607; McLeod v. McLeod, supra.

The only witness testifying was heard *ore tenus*. The question then, is whether the trial court is plainly and palpably wrong in not finding that complainants had discharged their burden of proving that Mrs. Hamner was the dominant party in the transaction which resulted in Mrs. Dockery's execution of the deed.

Mrs. Lollar's testimony is the only evidence offered by complainants to prove that Mrs. Hamner was the dominant party. Mrs. Lollar testified that Mrs. Dockery was her mother and Mrs. Hamner her sister; that Mrs. Dockery suffered a heart attack in January, 1957, when she was 78 or 79 years old; that she had a stroke in October or November, 1957; that, after the heart attack, Mrs. Hamner handled Mrs. Dockery's business affairs.

■ Mrs. Lollar testified that Mrs. Hamner "could handle" Mrs. Dockery and could "persuade her to do anything" Mrs. Hamner wanted her to do. Respondents' objection to this testimony was noted. There was no ruling on this or any other objection to evidence. By statute, in consideration of equity cases, the trial court and this court are enjoined to consider only such testimony as is relevant, material, competent, and legal where there is no ruling on objections to testimony. Act approved June 8, 1943, 1943 Acts, page 105; see 1958 Recompilation of Code 1940, Title 7, § 372(1). The testimony that Mrs. Hamner could handle Mrs. Dockery and persuade her to do anything Mrs. Hamner wanted her to do clearly was a conclusion of the witness and not competent and legal. We presume that the trial court did not, and we do not, consider this testimony.

Mrs. Lollar testified that Mrs. Dockery "never was herself" after the heart attack and "was disturbed and more or less living in the past." Respondents objected to this statement as a conclusion, which we think it is.

The witness testified that after the heart attack, Mrs. Dockery lived in a house near the property in suit; that a sister of witness, Mrs. Fields, "was staying there to watch over her"; that, when Mrs. Fields was not working, she would be there all the time, but when she worked she would be there from four o'clock until she left for work the next morning; that the witness stayed with Mrs. Dockery the other time from 8:00 until 4:00; that Mrs. Dockery would get it in her mind that she wasn't at home and she wanted to go home; that "We thought it was Windham Springs, but we would carry her there and that wasn't what she wanted"; that "where she was living was where she would make the statement that she wanted to go home. She didn't realize she was at home"; that Mrs. Dockery had been living in this house about 25 or 30 years; that she had confusion about her son, R. L., who had died, and called witness and wanted to know if he was with the witness' son; that Mrs. Dockery could not dial the phone; that R. L. was killed in the Second World War; that this was before the stroke; that "we couldn't understand what" Mrs. Dockery said after the stroke; that Mrs. Dockery would sometimes dial for her sons Frank

and Walter, who were dead, and ask why they hadn't come to see her; that this was during the time from January to October or November, 1957.

On cross-examination, Mrs. Lollar testified that Mrs. Dockery did not tend to her own business after the heart attack; that if she went to town she was carried and witness doesn't think she was on the street; that witness went with her one time to get her toenails trimmed; that Mrs. Dockery added a codicil to her will after the heart attack, she did it at home; that Lucille and "they" said that was what it was; that Eva Ray and Monroe Ward were there; that witness was cooking dinner for her mother; that that was done at her suggestion; that witness does not know why the codicil was made.

In this connection the following appears:

"Q That was done at her suggestion?

"A Yes, I guess so.

"Q You knew what she was doing then?

"A I don't know.

"Q Do you know why that codicil was made? You do, don't you?

"A I don't know.

"Q You don't know. Don't you know, Mrs. Lollar, that codicil was made because in her will she had made prior to this time she had given Pearl, her daughter, an acre of land on the back side of this piece of property she owned?

"A Yes.

"Q And in 1957 immediately before this she sold that piece of property to Mr. Copeland, didn't she?

"A Yes.

"Q She wanted to give Mrs. Fields another acre of land, didn't she?

"A We all suggested that.

"Q Didn't she suggest that to you?

"A No, she didn't suggest it to me. We asked her about it. She would murmur about it and we agreed we knew she wanted that."

Mrs. Lollar said further that she knew Mrs. Dockery had made a deed to Mr. Copeland to five or six acres of land in March; that Lucille handled all that; that Mrs. Dockery "didn't hardly know" what was going on; that Lucille "transacted that"; that witness does not know when Lucille's deed was made; that witness knew he (Mr. Hamner?) and she (Mrs. Hamner?) wanted it and he "done some work, but it was on the part they took"; that she (Mrs. Dockery?) did not give her (Mrs. Hamner?) this land; that she did not pay for it; that Mr. Hamner cleaned up "what he took" but never did anything on Mrs. Dockery's land; that witness was not present when Mrs. Dockery told Mr. Hamner she wanted him to go back there and clean that up; that witness could not walk and Mrs. Dockery could not walk; that Lucille carried them just above the club house; that she kept trying to show them "where it went and there was nothing to see where it went" and witness does not know where it was; that Mrs. Dockery did not know what Lucille was doing; that the hollow was cleared out but "it wasn't on Mama's land"; that witness "didn't go to see" and doesn't know; that witness was not present when "this deed was signed"; that witness "didn't know Lucille had a deed to that until about four days before Mama died. I didn't know she had ever made it"; that witness "heard Lucille say they would clear it out for a little strip of that land . . . . to straighten hers up"; that witness did not come to Tuscaloosa with her mother to sign the deed to Lucille.

Mrs. Lollar then testified as follows:

"Q On the occasion over there when this was all cleared out and the deed was made and everything, weren't you present when Mrs. Dockery told them she was happy and satisfied with it?

"A  I never heard that.

"Q  You were not present?

"A  No.

"Q  You weren't present and see her give Mr. Hamner and Lucille a receipt stating she was happy?

"A  No, I don't know nothing like that.

"Q  You didn't see anything like that?

"A  No.

"Q  You never heard anything about that?

"A  No, I have done told you I didn't know it until about three days before my mother's death.

"Q  You didn't have anything to do with that?

"A  No, sir, I didn't have anything to do with that. I don't know anything about it.

"Q  You would recognize your handwriting, wouldn't you?

"A  Yes, I would recognize it if I signed anything.

"Q  Is that your handwriting?

"A  Yes, that is my handwriting. Now I didn't sign a thing like that.

"Q  Is that your handwriting?

"A  Yes, that is my handwriting, I believe, unless they copied it from something else, but I never signed a thing like that.

"Q  You signed her name to that, didn't you, Mrs. S. E. Dockery?

"A  No, I didn't sign that. I didn't sign that.

"Q  You say that is your handwriting?

"A  It looks like it. I don't remember anything like that and that looks like my writing, but I didn't sign mama's name. I don't know where you got that. I don't remember anything like that. I would swear to that on a stack of Bibles, I don't.

"MR. DAVIS: We offer this in evidence as Respondents' Exhibit One."
Respondents' Exhibit One recites as follows:

"10-16-57

"This is to certify that A. T. and Lucille Hamner have paid in full for land bought from me.

"Her Mark
"/s/  Mrs. S. E. Dockery X
"/s/  Dovie Lollar"

The receipt is dated "10-16-57," four years before Mrs. Dockery's death on October 24, 1961. When Mrs. Lollar was examined with reference to the exhibit, she admitted ". . . . that is my handwriting . . . ." but said she "never signed a thing like that."

Mrs. Lollar testified further that she was present when Mrs. Dockery signed the deed to Mr. Copeland and that the witness' son and his wife witnessed the Copeland deed "if I am not mistaken."

■ The court made no formal findings of fact. We will assume that the court made those findings which the evidence supports and which will justify the decree rendered.

Complainants contend that they proved that Mrs. Hamner was the dominant party in the transaction in question, that the burden of proof, or of proceeding with evidence, then shifted to respondents to show by evidence that the transaction was fair and equitable, and that respondents failed to support this burden.

■ If complainants were correct in their contention that they had proved that Mrs. Hamner was the dominant party, and that the proof presented on this issue required the court so to find, then the result for which complainants contend on this appeal might follow. If, however, the court was at liberty to conclude that complainants had not presented evidence which required a finding that Mrs. Hamner was the dominant party, then complainants' argument fails. We are of opinion that, from

the evidence, the court could find that complainants had not proved to the reasonable satisfaction of the court that Mrs. Hamner was the dominant party.

In any event, the trial court was the judge of the credibility of the testimony. The court saw and heard the witness testify. The court was not bound to accept her testimony as correctly stating the facts. It would be difficult to reconcile parts of her testimony, for example: testimony that, prior to 1961, she knew nothing about the receipt and testimony that the handwriting on the receipt, apparently made in 1957, was her own handwriting. Other than by conclusion or innuendo, there is little more than a scintilla of evidence, if that much, to show that Mrs. Hamner was the dominant party in the transaction which resulted in execution of the deed to respondents.

We are of opinion that a finding, that complainants had failed to prove by evidence that Mrs. Hamner was the dominant party, would not be plainly and palpably wrong and that the decree should be affirmed.

Affirmed.

LIVINGSTON, C. J., and GOODWYN and MERRILL, JJ., concur.