214 So.2d 416

**WHITE DAIRY COMPANY, Inc.**

v.

**Clarence W. DAVIDSON.**

**6 Div. 482.**

Supreme Court of Alabama.

Sept. 26, 1968.

Henry B. Welch and John S. Tucker, Jr., Birmingham, for appellant.

Weir & Shannon, Birmingham, for appellee.

HARWOOD, Justice.

Pursuant to a bill filed by the White Dairy Company, Hon. W. C. Barber, a judge of the Circuit Court of Jefferson County, granted a temporary injunction restraining C. W. Davidson from carrying on or engaging in a similar business as that of White Dairy Company, and also from soliciting old customers of White Dairy either for himself, or as officer, agent, or employee of a person, firm, or corporation, pending the rendition of a final decree.

The temporary injunction was made contingent upon White Dairy filing with the Register a satisfactory bond, which was duly filed.

Therafter, Davidson timely filed a motion to dissolve the temporary injunction, and an answer to the bill.

The matter came on for hearing and thereafter the Chancellor issued a decree dissolving that part of the injunction restraining Davidson from "carrying on and engaging in a similar business to that of complainant (White Dairy Company) within Jefferson County, Alabama," but continued in effect that provision of the injunction restraining Davidson "from soliciting old customers of complainant, (White Dairy Company) either for himself, or as officer, agent, or employee of any person, partnership, firm, or corporation." (Par. ours)

This appeal is from the latter decree modifying the terms of the injunction as originally issued.

The evidence introduced in the hearing below tended to show that Davidson was first employed by White Dairy in 1942, as a route salesman. In 1947, he executed a written contract of employment. In this contract, Davidson's salary was fixed at 12% of the proceeds of sales made by him. This was the same compensation he had been receiving. The contract also contained a clause to the effect that upon termination of Davidson's employment for any cause, he would refrain in Jefferson County, Alabama, from carrying on or engaging in a similar business, and from soliciting old customers of White Dairy, either for himself or for others, for a period of fifteen months.

. In 1949, Davidson was promoted to Supervisor. This job basically concerned sales, service, collections, and route management for a division which included a number of routes.

In about five years, Davidson was promoted to District Manager in charge of four divisions covering approximately sixty routes. In 1958, he was promoted Sales Manager, in charge of district managers. His salary was approximately $12,000 per year. His duties were largely administrative.

In August 1966, Davidson signed a new employment contract containing a non-competition clause similar to the one contained in the earlier contract except that in this latter contract the period of non-competition was for five years.

In January 1967, Davidson resigned his position with White Dairy to accept a position with a dairy company in Atlanta, Georgia.

Davidson's mentally retarded daughter suffered emotional disturbances in the new surroundings in Atlanta, and had to be hospitalized. In about three months he returned to Birmingham and secured employment with Baker and Sons Dairy at a salary of $700.00 per month.

Davidson testified that the dairy business was the only business he knew, and the only type of business in which he could make a living of the kind to which he was accustomed.

He further testified that he was familiar with dairy business operations and that basically they are all operated in the same manner.

Davidson further testified that as personnel manager at Baker and Sons, he was in charge of recruiting and screening personnel, and directing company policy. He has nothing to do with sales, or contacting and developing new customers, and has never done so since his employment at Baker and Sons, nor has he ever solicited or attempted to employ any employee of White Dairy.

· Edgar H. Baker, Vice President of Baker and Sons Dairy testified that as personnel manager of Baker and Sons Dairy, the duties of Davidson were hiring and training personnel. Davidson had nothing to do with sales. To this witness' knowledge, Davidson had never solicited any customers for Baker and Sons nor discussed with him or any other officer of his company, any information he gained when working for White Dairy, nor furnished to Baker and Sons any customer lists or other information concerning White Dairy.

For White Dairy, Mr. Raymond L. Bell, Manager of the White Dairy Division of Barber Milk Company, testified as to the knowledge Davidson had access to as to the inner workings of the White Dairy Company business, that is, sales volumes, the territories served, whether good or bad, the abilities of various employees, sales promotion plans, sales personnel turnover, etc.

On cross examination, Mr. Bell testified that of his own knowledge he knew of no customer of White Dairy that had been solicited by Davidson since his employment by Baker and Sons, nor of any account of White Dairy being taken over by Baker and Sons, nor did he know of any injury or damage done to White Dairy by Davidson.

Davidson being recalled for further cross examination, testified he had not applied for work at any dairy company outside of Jefferson County.

The above was all the evidence submitted in the hearing below.

Applicable to the question now presented are Sections 22 and 23, Title 9, Code of Alabama 1940. These sections read:

22. "Every contract by which any one is restrained from exercising a lawful profession, trade, or business of any kind, otherwise than is provided by the next two sections, is to that extent, void.

· 23. "One who sells the good will of a business may agree with the buyer, and one who is employed as an agent, servant, or employee may agree with his em-

ployer, to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city, or part thereof, so long as the buyer or any person deriving title to the good will from him, and so long as such employer carries on a like business therein."

In Hill v. Rice, 259 Ala. 587, 67 So.2d 789, the appeal was from decrees overruling respondents' demurrer to the bill of complaint and granting a temporary restraining order applicable to Mobile County. The bases of the relief sought in the bills were non-competition provisions in contracts of employment between the owner of a dance studio and the two respondents who had been employed as dance instructors. One of the grounds supporting the demurrers to the bills was that there was no equity in the bill.

In writing to this point, the late Justice Goodwyn made an exhaustive analysis of the cases and principles enunciated by this court and the courts of our sister states in the event the same should proceed to trial in the court below. This opinion demonstrates that in truth and in fact, only broad generalities have resulted from the efforts of the courts to formulate governing postulates to the type of question now being considered. As stated in Arthur Murray Dance Studios of Cleveland v. Witter, (Ohio Com. Pleas, 1952), 105 N.E. 2d 685:

"This is not one of those questions on which the legal researcher cannot find enough to quench his thirst. To the contrary there is so much authority it drowns him. It is a sea—vast and vacillating, overlapping and bewildering. One can fish out of it any kind of strained support for anything, if he lives so long. This deep and unsettled sea pertaining to an employee's covenant not to compete with his employer after termination of employment is really seven seas: * * *."

In Shelton v. Shelton, 238 Ala. 489, 192 So. 55, Justice Bouldin while observing that Sections 22 and 23, supra, "mean what they say," further observed that:

"It should be steadily borne in mind that a court of equity will not grant injunctive relief in every case within the letter of this statute. * * *" (i. e., Sec. 23, supra.)

* * * * * *

"Injunction is in much a discretionary remedy to prevent substantial injury where no adequate remedy at law obtains. * * *"

■ Contracts restraining employment are looked upon with disfavor in modern law. Kadis v. Britt, 224 N.C. 154, 29 S.E.2d 543, 152 A.L.R. 405, and authorities therein cited.

In Hill v. Rice, supra, Justice Goodwyn quoted further from Kadis v. Britt, supra, as follows:

"From the beginning the argument against restraint of employment was—and still is—more powerful than those based on the evils of monopoly incident to restrictions in sales contracts. Restraint of employment tends not only to deprive the public of efficient service, but to impoverish the individual and make him a public charge at the expense of the taxpayer. See Am.Law Reps.; Clark Paper & Manufacturing Co. v. Stenacher, 236 N.Y. 312, 140 N.E. 708, 29 A.L.R. 1325; also, Benjamin on Sale, supra. Modern thought, at least in this country, would perhaps place the emphasis on the plight of the individual, who might be needlessly pauperized while ready, able and willing to work at his usual occupation for the support and independence of himself and his family."

In Deuerling v. City Baking Co., 155 Md. 280, 141 A. 542, 67 A.L.R. 993, the Maryland court laid down as guide lines in determining the reasonableness of contractual provisions in restraint of employment the following:

"The question of whether it is reasonable depends upon circumstances, the more important of which are: Is the purpose to be obtained a fair and conscionable one; will it do greater harm to

the employee than good to the employer; and, if it is reasonable as between the parties, does it so injuriously affect the public as to make it void as against public policy?"

The fact that the employment is of a character, which if brought to the knowledge of a competitor, would prejudice the former employer, tends to establish the reasonableness of the restrictive covenants. However, under the testimony of Davidson and Baker, Davidson had never discussed the inner workings of White Dairy with officials of Baker and Sons Dairy. His position with Baker and Sons was an administrative one, and he was in no wise concerned with sales, nor solicitation of new accounts. Even Bell, a witness for White Dairy, testified that he knew of no solicitation of White Dairy customers by Davidson since his employment at Baker and Sons, nor of any accounts of White Dairy being lost as a result of any activities of Davidson, nor did he know of any injury or damage to White Dairy resulting from Davidson's employment at Baker and Sons.

This being so, it would appear that great harm would result to Davidson in his efforts to support himself and his family should the provision of the injunction prohibiting him from engaging in any business similar to that of White Dairy be kept in force, with no concomitant benefit to White Dairy. This, in itself, would deny the reasonableness of the above mentioned provision, and amply justify the court's exercise of discretion in striking the provision from the injunction.

Further, the evidence was ore tenus before the Chancellor. This being so, every presumption will be indulged in favor of his findings, and they will not be disturbed unless palpably wrong. We find no such basis for disturbing the decree entered.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.