231 So.2d 305

**Betty Gay ORTON**

v.

**Lonia Violet GAY.**

**6 Div. 700.**

Supreme Court of Alabama.

Jan. 29, 1970.

Rehearing Denied Feb. 26, 1970.

Rogers, Howard, Redden & Mills, Birmingham, for appellant.

Maurice Rogers, Birmingham, for appellee.

BLOODWORTH, Justice.

This is an appeal by respondent from a decree setting aside a real estate deed made to her by the complainant (her mother); entering a judgment against her for $9,932.75; and, finding reasonable grounds to believe that complainant is mentally incompetent at the present time, and in need of a guardian to conduct her business affairs.

Complainant is the widow of Henry Oscar Gay who died testate March 5, 1966, bequeathing his entire estate to her. She was 70 years old at the time of the trial. There are three children of the Gays, all of whom were over 21 years of age at the time of the trial, respondent Betty Gay Orton, Truman Gay, and Helen Cheatham.

On November 30, 1966, Mrs. Gay conveyed all her real estate by warranty deed to her youngest daughter, Mrs. Orton. On June 15, 1967, she filed a bill of complaint against her daughter seeking to set aside the deed, alleging it was procured by fraud and undue influence; and, also seeking to set aside certain transfers of personalty on account of fraud and undue influence.

The bill of complaint, as amended, alleges, in substance, as follows: That complainant is 69 years of age, a widow, and considerably dependent upon the advice, counsel and assistance of respondent, her only child living in Jefferson County, Alabama; that she has very little business experience with matters such as finances, taxation, real estate management and legal procedures; that she was advised and induced by respondent to execute a warranty deed conveying her entire real estate holdings worth in excess of $50,000 to respondent; that respondent falsely represented to her, with intent to defraud her out of her real estate, that unless she conveyed the real estate to respondent, the great bulk of her property would be lost to inheritance taxes; that she should convey all of her real estate to the respondent in order to become eligible to receive old age benefits, and that she would not receive full benefits unless she did divest herself of the real estate; that respondent could more ably handle the management of the real estate; that the execution of the deed was not her own free act but was in actuality the act of the respondent and a consequence of the undue influence practiced upon her by respondent, while the two occupied the confidential relationship of mother and daughter; that the respondent by the practice of undue influence upon her mother, and by false and fraudulent representations, has taken her cash, stocks and bonds in the approximate sum of $25,000; that the deed was executed and delivered to respondent without any consideration whatever; that as a result of the confidential relationship, the complainant relied upon her daughter and believed the false representations, and therefore executed and delivered the deed; that, as a result of the confidential relationship with the complainant, respondent prevailed upon her mother to make the respondent a joint tenant on all her (complainant's) bank accounts, bonds and stocks, and then converted the personal property to her own personal use.

There are 15 assignments of error. They fall into three categories, and thus we will consider them.

First, whether the bill was demurrable (assignments of error 1–5).

Second, whether the proof was sufficient to sustain the averments of either "fraud" or "undue influence" (assignments of error 6–10).

Third, whether the trial court was in error in several of its rulings on evidentiary questions (assignments of error 12–15).

### Whether the Bill was Demurrable

The first assignment of error charges that the court erred in overruling respondent's demurrer to the amended bill of complaint, as a whole. Respondent's argument is that the bill is multifarious. She says the bill seeks to cancel the deed, and seeks to avoid unspecific transfers of cash, stocks, and bonds which the bill alleges were both effected through fraud and undue influence.

■ As a general rule, a bill in equity is multifarious when it seeks relief as to two distinct subjects having no connection with each other. We think what we said in City of Marion v. Underwood, 231 Ala. 225, 227, 164 So. 296, has application here:

"* * * As often observed, no universal rule in regard to multifariousness is admitted to be established as to cover all possible cases. The objection is largely a matter of discretion, and every case must, in a measure, be governed by what is convenient and equitable under its own peculiar facts, subject to the recognized principles of equity jurisprudence. It is, therefore, always proper to exercise this discretion in such a manner as to discourage future litigation and prevent multiplicity of suits * * *. * * *"

See also, Krieger v. Krieger, 276 Ala. 466, 163 So.2d 623; Littleton v. Littleton, 238 Ala. 40, 188 So. 902.

■ With these principles in mind, we think the trial court did not err in over-ruling the demurrer to the bill, as amended, on this ground.

Assignment of error 2 charges the court erred in overruling respondent's demurrer to that aspect of the amended bill which sought to set aside the deed on the basis of fraud, in that the averments are insufficient in failing to aver the complainant relied upon any false representation.

■ Respondent says, and we agree, that our rules of equity pleading do not permit fraud to be alleged as a conclusion. Rather, facts out of which it is alleged to have arisen must be averred. Springdale Gayfer's Store Co. v. D. H. Holmes Co., 281 Ala. 267, 201 So.2d 855; Turner v. Sullivan, 272 Ala. 608, 133 So.2d 254.

Whether the averments of the bill in the instant case sufficiently aver reliance by the complainant upon any false misrepresentation made by the respondent we do not have to decide. For, even if we assume the bill to be demurrable, we do not find that the trial court's overruling the demurrer constitutes reversible error.

■ We have held that where the trial court overrules a demurrer, without ruling on the demurrers to the separate aspects of the bill, the effect is a ruling only on the demurrer to the bill as a whole, and the decree must be affirmed on appeal if any aspect is good. McCary v. Crumpton, 263 Ala. 576, 83 So.2d 309; Taylor v. Jones, 280 Ala. 329, 194 So.2d 80.

■ Since we think the bill contains equity insofar as it seeks to have the deed declared invalid on the ground of "undue influence," we find no merit in this assignment.

In assignment of error 3, respondent claims the court erred in overruling respondent's demurrer to that aspect of the bill, as amended, which sought to set aside the deed for "undue influence." Respondent concedes that undue influence may be alleged as a conclusion. However, she contends that the complainant undertook to set

out the facts upon which undue influence is based and that such facts are not sufficient as a matter of law.

We think the bill as amended contains sufficient allegations of "undue influence," to withstand the grounds of demurrer attacking this aspect.

We have held that a bill alleging undue influence is not subject to demurrer for failure to allege acts of undue influence in detail. Barkley v. Boyd, 211 Ala. 50, 99 So. 196.

Nor, are we convinced by the argument of respondent that the complainant, instead of relying on undue influence in general terms, has set out the quo modo and that the facts alleged are insufficient as a matter of law. We think the several allegations of undue influence are sufficient with respect to that aspect which seeks to set aside the deed.

In assignments of error 4 and 5, respondent charges the allegations of the bill are insufficient to allege "fraud" and "undue influence" as grounds for setting aside the transfers of personal property.

These allegations are meager. But, we pretermit consideration as to whether they are sufficient, in view of our conclusion, hereinafter stated, that the evidence is insufficient to support the trial court's decree setting aside the transfers of personalty.

*Whether the Proof is Sufficient*

Assignment of error 6 charges that the court erred in its final decree in setting aside the deed executed by complainant to respondent.

The trial court's decree made no finding of fact and does not point out whether it set aside the deed on the grounds of fraud or undue influence. The rule in this regard is that the reviewing court will assume that the trial court made those findings which the evidence supports and which will justify the decree rendered.

Dockery v. Hamner, 281 Ala. 343, 202 So. 2d 550.

We have also said that if the trial court's decree is fairly supported by credible evidence under any reasonable aspect, we must affirm the decree, irrespective of what view we may take as to the evidence. Tyra v. Burns, 279 Ala. 84, 181 So.2d 899.

In view of our previously announced conclusion that we do not have to decide whether the pleadings adequately aver fraud, since there is a good aspect relative to undue influence, then obviously we do not have to determine whether the evidence supports the decree setting aside the deed on the fraud theory.

At the outset, we feel we should reiterate certain legal principles which must obtain before a deed may be set aside on the ground of undue influence.

In general, the undue influence which is required to avoid a conveyance must proceed from some act of dominance or coercion over the will of the grantor. Fortune v. Boutwell, 271 Ala. 592, 126 So. 2d 116. That is, to constitute undue influence, it must be such as to dominate the grantor's will and coerce his will to serve another's in the act of conveying. Halman v. Bullard, 261 Ala. 115, 73 So.2d 351.

What is "undue influence" depends on the facts and circumstances of each case. Jones v. Boothe, 270 Ala. 420, 119 So.2d 203. Undue influence is said to be a species of constructive fraud, and although *difficult of direct proof*, much latitude is allowed in the testimony. Jones v. Boothe, supra; Tipton v. Tipton, 249 Ala. 537, 32 So.2d 32; Barkley v. Boyd, supra.

The relationship between complainant and respondent has been shown to be that of parent and child. In this regard, we said in Dockery v. Hamner, supra, 281 Ala. at page 345, 202 So.2d at page 551:

"* * * The relationship of parent and child is confidential. It is presumed,

**276**

prima facie, that, in all transactions between parent and child, the parent is the dominant party. The mere fact of a donation from parent to child does not itself raise a presumption of undue influence, but, on the contrary, the presumption is that such a transaction is free from undue influence. Dillard v. Hovater, 254 Ala. 616, 618, 619, 49 So.2d 151.

*"Such presumption is not conclusive, and where it is made to appear by the proof that the child, and not the parent, is the dominant spirit, then the burden of proof is shifted to the former to establish the fairness of the transaction and that it was not the result of undue influence.* Tipton v. Tipton, 249 Ala. 537, 32 So.2d 32." [Emphasis supplied]

It is clear from our decisions that complainant, Mrs. Gay, is required to sustain the burden of showing that the "order of nature" has been reversed and that respondent, Mrs. Orton, was the dominant force in procuring the deed from her. Dockery v. Hamner, supra.

We have said, the determination "as to who was the dominant party depends on the facts and circumstances of each particular case." Pitts v. Hawkins, 264 Ala. 428, 87 So.2d 835.

 We conclude, after reading the record, that there is evidence to support a finding by the trial court that the child, and not the parent, was the dominant spirit. The burden is then shifted to the child to establish the fairness of the transaction and that it was not the result of undue influence. Dockery v. Hamner, supra.

We believe the evidence supports a finding that the child (Mrs. Orton) did not sustain that burden. We see no good purpose to be served by setting out in detail the testimony which supports the trial court's decree. The evidence was in conflict. The trial court obviously chose to believe the complainant's evidence.

We summarize some of the pertinent testimony which supports the trial court's decree.

Complainant, Mrs. Gay, was 70 years of age at the time of trial; her memory is very, very bad; it has gotten much worse since her husband's death; she has been in the hospital with a convulsion; her daughter lived in the same block as she, on part of the 15-acre tract, which is all the real estate left her at her husband's death; the tract included her homeplace and several rental houses; a few days after the husband's death, her daughter took her to the court house where she signed her deceased husband's name to the satisfaction of an $8,640 mortgage (given by the daughter on the daughter's homeplace); although the daughter claimed the debt was paid, she was unable to show receipts or checks evidencing that fact; her daughter accompanied her to the safe deposit box of her deceased husband and they took out savings bonds, wills, insurance policies and cash; she does not know how much money was in the box, nor the amount of the bonds, although she says it took her two hours to sign her name to the bonds; she does not know what happened to the various bank accounts, cash, and savings bonds except they went to the daughter; some $12,000 in cash was spent by the daughter; she did sign a deed which conveyed all her real estate, worth about $50,000, to her daughter; stating she understood it was a management paper for her daughter to manage her estate; there was no consideration for the deed; she trusted her daughter and left the management to her because she did trust her; her daughter told her if she signed the paper and let her manage all her affairs, then she would be able to draw her social security and wouldn't be sent to the poor house or a rest home; the daughter told her to "sign this now and I'll manage everything"; the daughter was a 17 year veteran employee of the local Social Security office being employed there as a "claims authorizer";

the respondent divorced her husband within two months after the deed was executed, married her husband's brother within a month, after the divorce decree was rendered, and left the country; the complainant testified she filed suit when "I just woke up is all, seen I had lost everything I had, didn't have anything at all, nothing."

Since the trial court heard the testimony of the witnesses ore tenus, its decree is clothed with a presumption of correctness, and it will not be reversed unless plainly and palpably erroneous. White Dairy Co. v. Davidson, 283 Ala. 63, 214 So.2d 416.

Was the trial court plainly and palpably wrong in decreeing the deed from complainant to respondent to be null and void? We think not. We consider the trial court's decision in this respect to be free of reversible error, and supported by creditable evidence.

In assignment of error 6 respondent argues that because the trial court found, " * * * that there is a reasonable ground to believe that at the present time the complainant is mentally incompetent * * *" and " * * * that there is a reasonable ground to believe that the estate and business affairs of the complainant must be transacted through a guardian of the Court," this finding serves to disqualify the complainant as a witness and to render her testimony a nullity.

We do not agree. It is apparent from the record that the trial court did not believe complainant lacked capacity to testify, for we think it safe to conclude that without complainant's testimony there would indeed be insufficient evidence to support the trial court's decree. We think the trial court's finding as to her mental incapacity relates to complainant's age, lack of business acumen and experience, poor memory, and the apparent need for someone to manage her estate and business affairs.

The applicable rule of law is concisely stated in McElroy, The Law of Evidence in Alabama, Vol. I (2d Ed.), Sec. 94.01(2), at page 237, as follows:

"Title 7, sec. 439, Code of 1940 provides 'that persons who have not the use of reason, as idiots, and lunatics during lunacy, are incompetent witnesses.' * * *

\* \* \* \* \* \*

"The fact that a person's mental disorder renders him incapable of managing his own affairs, or that he is under guardianship, or even that he, by reason of the mental disorder, is kept confined in a hospital for the mentally ill, does not necessarily disqualify him to be a witness. Worthington v. Mercer, 96 Ala. 310, 11 So. 72 [17 L.R.A. 407]; Cuesta v. Goldsmith, 1 Ga.App. 48, 57 S.E. 983.

\* \* \* \* \* \*

"Whether a person's affliction with a mental defect is such as to incapacitate him to be a witness is a matter to be determined by the trial judge. * *"

It is obvious that the trial court determined this issue adversely to respondent and favorably to complainant, as we have already pointed out.

In assignments of error 7, 8, 9 and 10, respondent urges error in the trial court's awarding a personal judgment against her based upon alleged fraud or undue influence in obtaining personal property from her mother some several months prior to the execution of the deed.

In the words of respondent's brief:

"The record is totally void of any evidence of fraudulent misrepresentations made by the Respondent to the Complainant to induce the Complainant to part with money or other personal property.

\* \* \* Therefore, this portion of the decree clearly cannot rest upon fraud.

278

"Neither does the evidence show any specific acts of undue influence exercised by the Respondent upon the Complainant to persuade her to part with her money or any other thing of value. * * * This being true, there is no evidence of either fraud or undue influence to support the money judgment. * * *"

We agree.

■ Likewise, we agree with respondent that complainant is not entitled to those funds paid into court by Attorney Clewis Trucks. The testimony is that these funds were paid by respondent personally to Attorney Trucks. We find no evidence the funds were complainant's. To this extent the trial court's decree must be reversed.

*Whether the Trial Court Erred in Evidentiary Rulings*

The final assignments deal with evidentiary questions. Notwithstanding this is an equity case and might have been tried in accordance with Act No. 101, Acts of the Legislature 1943, p. 105 (now appearing as Title 7, § 372(1), Code of Alabama 1940, as amended, recompiled 1958), specific objections were made and ruled on, and thus the act is inapplicable.

■ There is no argument as to assignment of error 11, therefore, it is deemed waived. Stallworth v. Doss, 280 Ala. 409, 194 So.2d 566.

■ In assignment of error 12, error is urged when the following occurred during the examination of complainant, viz:

"Q. All Right. Now, tell the Judge how you came to sign this paper, what took place before you signed this paper and what you were doing when you signed it.

"A. I just signed whatever she brought me to sign. I just trusted her and handed it over to her.

"Q. Well, what did she tell you, if anything, about what you were doing?

"A. I wouldn't have signed a Deed for anything. I signed a—

"MR. MILLS. We object, move to exclude that.

"THE COURT: Overruled."

While we agree the answer may have been objectionable and should have been excluded, we do not agree that overruling the objection constituted reversible error. For, soon after the colloquy above, the following occurred, viz:

"Q. (By Mr. Maurice Rogers) Now, what were you saying about a management paper?

"A. Yes, sir, that's right. This, you know, just for her to manage things for me, and I wouldn't have to—.

"Q. Was that what she told you she was going to do?

"A. Worry with it, I just let her do it all. She give me a paper to sign, I just signed it. Not no Deed, I didn't sign no Deed, no.

"Q. So far as you know you have not signed any Deed to your property?

"A. No, no."

Thus, complainant's testimony is she did not sign a deed. Of course, the evidence is that she did sign the deed. We conclude that whether she "wouldn't have signed a deed" is harmless error under Rule 45, Revised Rules of the Supreme Court, 279 Ala. XXI, XLI.

■ Assignment of error 13 complains of testimony by Truman Gay (complainant's son) that his mother "don't know nothing about business" in the following context, viz:

"Q. Did you ever receive any money or take any money from your mother for any purpose?

"A. Yes, sir.

"Q. What was that for?

"A. That was to pay bills with because she can't write checks, she just signs a blank check and tells you to fill it out and she don't know nothing about business and—

"MR. MILLS: We object to that and ask to exclude what she knows, mental operation.

"MR. MAURICE ROGERS: That's what she says.

"THE COURT: Overruled."

We do not think this answer is objectionable on the grounds that it is testimony as to "what she knows, mental operation."

In Houston v. Grigsby, 217 Ala. 506, 116 So. 686, in a will contest, this court held there was no reversible error in not excluding the testimony of a witness that the testator *"always knew what she was doing."* [Emphasis supplied]

In Hale v. Cox, 231 Ala. 22, 163 So. 335, in a will contest, there was no reversible error in not excluding an answer of a witness (who overheard a telephone conversation which testator had in his office), viz: "After he got through with that conversation, *he didn't understand what he had said."* [Emphasis supplied] (The motion to exclude and its overruling by the court appear in the original record, but not in the reported decision.)

We see little difference in allowing a witness to testify: *"She don't know nothing about business,"* or *"she always knew what she was doing,"* or *"he didn't understand what he said."* [Emphasis supplied]

In view of the authorities mentioned, we do not consider the answer in this case to be reversible error.

Assignments of error 14 and 15 complain of the trial court's overruling objections to two questions propounded to Truman Gay, but since neither question was answered, there would be no reversible error in either ruling.

Therefore, since we find the evidence to be insufficient to support the trial court's decree fixing a judgment against the respondent for $9,932.75, based on that aspect of the bill seeking to avoid certain transfers of personal property from complainant to respondent on account of fraud or undue influence, and ordering Attorney Trucks to pay $1200 into court for complainant, the cause must be reversed in part and remanded to the trial court with directions to reframe its final decree in conformity with this opinion.

In view of our finding that the evidence is sufficient to support the trial court's decree setting aside the deed as null and void, the cause is affirmed as to that aspect of the bill.

Affirmed in part, reversed in part, and remanded with directions.

LIVINGSTON, C. J., and SIMPSON, COLEMAN and McCALL, JJ., concur.